[No. 13639.  In Bank. — March 31, 1892.]

WILLAMETTE STEAM MILLS LUMBERING AND MANUFACTURING COMPANY ET AL., RESPONDENTS, v. LOS ANGELES COLLEGE COMPANY, APPELLANT.

94 229
94 207
95 395

94 229
96 333

94 229
97 10

94 229
99 320

94 229
102 326
102 445

94 229
104 509

94 229
107 503

94 229
109 550

94 229
111 294

94 229
115 131
115 661

94 229
119 378

94 229
122 83

94 229
124 27
d125 374

94 229
127 26

94 229
135 640

94 229
138 617

94 229
149 754

MECHANICS' LIENS — ACTIONS FOR FORECLOSURE — CONSOLIDATION OF ACTIONS — JUDGMENT. — After the consolidation of several actions for the foreclosure of different mechanics' liens, as provided by section 1195 of the Code of Civil Procedure, the actions should be treated as a single action by the respective plaintiffs against the defendants, and the decision of the court should be embodied in a single set of findings, upon which a single judgment should be entered, directing a sale of the property affected by the liens, and the application of its proceeds to the satisfaction of the amounts due the respective lienors.

ID. — CONTRACT — REFERENCE TO PLANS AND SPECIFICATIONS — FILING OF CONTRACT. — Where a building contract provides that the contractor shall do the work contracted for according to certain drawings and specifications, which are referred to in the contract as being "hereto annexed," the drawings and specifications are an essential part of the contract, and until they are so annexed the contract is merely inchoate, and cannot form the basis of a recovery between the parties thereto; and in order that such contract should be the measure of the respective rights and liabilities of the parties thereto, it is essential that such drawings and specifications should be filed in the recorder's office, and a failure so to do destroys the validity of the contract.

ID. — MEMORANDUM OF CONTRACT. — Under section 1183 of the Code of Civil Procedure as amended in 1887, the owner or the contractor could satisfy the requirements of the statute by filing either the contract or the memorandum provided by the section; if he filed the contract, he must file the whole of it, including the drawings and specifications, if they were made a part thereof, or if the memorandum were filed, it must contain all the matters required by the statute to be stated therein.

ID. — TERMS OF PAYMENT OF CONTRACT PRICE. — A provision in the contract for the payment of the contractor, to the effect that "seventy-five per cent of the *cost* of material and work completed at the time of payment is to be paid on the first and third Saturday of each month as the work progresses," and "that the last and final payment is to be made thirty-five days after completion of the work," without specifying the amount of that payment, is not in compliance with section 1184 of the Code of Civil Procedure, requiring the contract to provide that at least twenty-five per cent of the whole *contract price* shall be payable at least thirty-five days after the final completion of the contract.

ID. — MEMORANDUM INSUFFICIENT IF CONTRACT IS INSUFFICIENT. — The memorandum of the contract filed in the recorder's office in lieu of the contract can have no higher force than the contract itself, and if the contract fails to comply with the requirements of the statute, the memorandum itself must be equally insufficient.

ID. — STATEMENT OF CHARACTER OF WORK. — The building contract filed in the recorder's office provided that the work was to be done conformable to certain drawings and specifications referred to as being "hereto annexed," and that the building was to be "three stories high," but did not set forth the material of which the building was to be constructed, or any item from which its general character could be ascertained. The contract, in referring to the drawings and specifications, stated that they were "intended to co-operate so that any works exhibited in the drawings and not mentioned in the specifications, or *vice versa*, are to be executed the same as if they were mentioned in the specifications and set forth in the drawings." Neither the drawings nor the specifications were filed in the recorder's office. *Held*, that the contract, considered as a memorandum merely, was insufficient, under section 1183 of the Code of Civil Procedure, because it failed to set forth "a statement of the general character of the work to be done."

ID. — FAILURE TO FILE CONTRACT. — Under section 1183 of the Code of Civil Procedure, the failure to file the contract or memorandum containing the statements required by the statute renders the contract wholly void for all purposes. It cannot be the basis of a recovery by the contractor against the owner, nor can it be looked to for the purpose of determining the amount for which the owner is liable, or when any payment is to be made. In any action against him by a laborer or material-man, their rights are to be determined by other rules, and irrespective of any provision of such contract.

ID. — CLAIM OF LIEN — FILING OF. — In order that a laborer or material-man may preserve and enforce the lien provided for him by section 1183 of the Code of Civil Procedure, he must file his claim therefor in the recorder's office, with as much specification and within the time limited by the statute as if he had himself made a direct contract for his labor or material with the owner.

ID. — TIME FOR FILING LIEN WHEN CONTRACT IS VOID — COMPLETION OF BUILDING. — Where the contract is wholly void by reason of the failure to file it or a memorandum thereof in the recorder's office, there is neither a "contract" nor an "original contractor," and a laborer or material-man, in order to perfect his lien, cannot, under section 1187 of the Code of Civil Procedure, file his claim therefor until after the actual comple-

tion of the building, or until after there had been a cessation from labor for thirty days upon the unfinished building. In such a case, the question when there was an actual completion of the building is one of fact.

Id. — Occupation and Use of Building by Owner. — The provision of section 1187 of the Code of Civil Procedure, making occupation and use of the building by the owner, or his acceptance thereof, conclusive evidence of completion, only applies to cases in which there has been a valid contract between the owner and the original contractor for the erection of the building.

Appeal from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Graves, O'Melveny & Shankland,* and *R. H. F. Variel,* for Appellant.

*Johnston & Borden, Conrey & Swanwick, J. W. Mitchell, R. Dunnigan, Reymert, Orfila & Reymert,* and *C. McFarland,* for Respondents.

Harrison, J. — Action for the foreclosure of several mechanics' liens.

The Los Angeles College Company entered into an agreement with W. E. Lane, bearing date September 8, 1887, for the erection of a college building for the sum of twenty-three thousand dollars, but the agreement was not executed until October 6th, on which latter day it was filed in the office of the county recorder for Los Angeles County. The document then filed made reference to certain drawings and specifications as "hereunto annexed," but they were not filed in the recorder's office. Lane entered upon the performance of the contract, but abandoned it March 6, 1888, and thereupon the college company took possession of the premises, occupied and used the same continuously thereafter, and caused the building to be completed on the 21st of April. At various dates, the earliest being March 19th, and the latest May 8th, claims for mechanics' liens were filed by the respective respondents herein, and afterwards eight sep-

arate actions were commenced for their enforcement. When the causes came on for trial, the court made an order that they be consolidated, and their trial was had under such order, but the court made separate findings for each cause, and rendered a separate judgment for each plaintiff for the sale of the premises to satisfy the amount of his claim. The actions are brought here upon an appeal by the college company from the several judgments, and from an order denying  new trial, and are presented in a single record embracing the several judgments, and a single statement of the case, prepared and settled for all the actions.

1. The practice adopted by the court below in making separate findings and judgments is not only inconsistent with its order consolidating the actions, but is itself attended with great inconvenience and the possibility of serious complication. The provision of section 1195 of the Code of Civil Procedure, authorizing such consolidation, is placed in the same category with that permitting the several claimants to join as plaintiffs in one action; and after the order of consolidation had been made, the court should thereafter have treated the actions as a single action by the respective plaintiffs against the defendants, and embodied its decision in a single set of findings, upon which a single judgment should have been entered. By this course the court would have very greatly abridged the record and facilitated its examination here, and would also have avoided certain inconsistencies in the findings of fact which it has made upon the same evidence. In five of the cases the court has found that the building was occupied by the owner on the 7th of March, but in one it finds such occupancy to have been on the 6th of March, and in two it makes no finding whatever upon the subject. Inasmuch, however, as, under the view we take of the case, the time when such occupancy began is immaterial, these inconsistent findings do not constitute a reversible error. A more serious objection, however, is presented by the fact that separate judgments were entered in favor of the respective claimants at different

dates, ranging from March 21st to May 1st.  If, upon these judgments, sales of the property should be made at different times, there might be different purchasers, and the respective titles acquired by such purchasers would necessitate further litigation for the purpose of determining which was the superior.  As the court had tried the causes as a single action, it should have incorporated into its findings all the facts that were in issue, directing, if necessary in any particular case, an amendment of the pleadings for the purpose of having them conform to the proofs, and thereafter should have rendered a single judgment, directing a sale of the property and the application of its proceeds to the satisfaction of the amounts to which it found that the claimants were respectively entitled.

2.  The contract between Lane and the college company is in the form of an ordinary building contract, and provides that the contractor will do the work contracted for " conformable to the drawings and specifications made by R. B. Young, architect, and signed by the parties, and hereto annexed."  The insertion of this clause in the contract made the drawings and specifications an essential part thereof, as material as was the price of the work or the terms of payment; and until they were " annexed " to the contract so that its entire terms could be ascertained by mere inspection, and without oral testimony, the contract was only inchoate, and not complete, and could not form the basis of a recovery.  ( *Worden* v. *Hammond*, 37 Cal. 63.)  Being by virtue of its terms a part of the contract itself, it was necessary for the parties thereto, or one of them, if it was desired that the contract should be the basis of his liability, or the measure of his right of recovery, to cause the same to be filed in the recorder's office, and a failure to do so destroyed the validity of the contract. ( *Holland* v. *Wilson*, 76 Cal. 434.)  It is quite as important for the owner as for the contractor to see that the contract is so filed, since without it his liability has no contractual limit.  It does not appear from the record

whether the drawings and specifications were in fact annexed to the original contract, but it is stipulated that they were not filed in the recorder's office, and consequently the contract itself was not filed.

In 1887 the legislature amended section 1183 of the Code of Civil Procedure by providing that instead of filing the entire contract in the recorder's office, as had been previously required, there might be filed a memorandum thereof, "setting forth the names of all the parties to the contract, a description of the property to be affected thereby, together with a statement of the general character of the work to be done, the total amount to be paid thereunder, and the amounts of all partial payments, together with the times when such payments shall be due and payable." After this amendment was made, the owner or the contractor could satisfy the statute by filing either the contract or such memorandum; but if he filed the contract, he must still file the whole of it, including the drawings and specifications, if they were made a part thereof; while if he preferred to file the memorandum, such memorandum must contain all the matters which are prescribed in the statute as the equivalent of the contract.

Section 1184 of the Code of Civil Procedure declares: "The contract price shall, by the terms of the contract, be made payable in installments, at specified times, after the commencement of the work, or on the completion of specified portions of the work, or on the completion of the whole work; provided, that at least twenty-five per cent of the whole contract price shall be made payable at least thirty-five days after the final completion of the contract. . . . . In case such contracts and alterations do not conform substantially to the provisions of this section, the labor done and materials furnished by all persons except the contractor shall be deemed to have been done and furnished at the personal instance and request of the person who contracted with the contractor, and they shall have a lien for the value thereof."

The contract in the present case fails to conform to

the requirements of this section. Instead of providing that at least twenty-five per cent of the whole *contract price* shall be payable at least thirty-five days after the final completion of the contract, its provision is, "the last and final payment to be made thirty-five days after completion of the work according to contract," without specifying the amount of that payment. It is previously provided in the contract that "seventy-five per cent of the *cost* of material and work completed at the time of payment is to be paid on the first and third Saturdays of each month as the work progresses"; but there is no provision that at least twenty-five per cent of the whole contract price shall be made payable thirty-five days after the completion of the contract. There is a manifest difference between setting forth the *amount* that is to be paid at any particular date, and stating that a certain percentage of the *cost* will be so paid. Although the *cost* and the *contract price* of the work contracted for may be the same, yet there is no necessary connection between the two. It is easy to see that a contract might be entered into at such a figure for the entire work that a payment of seventy-five per cent of the *cost* of the material and work completed at stated times as the work progressed would exhaust the entire *contract price* at or before the completion of the build-ing, so that there would be nothing with which to meet the liens that might be filed within thirty days thereafter. It is sufficient, however, to say that the statute requires this provision in the contract, and that a failure to observe this requirement is followed by a failure to receive the benefits provided by the statute.

Whether the document which was filed in the recorder's office is to be regarded as the original contract, or as a memorandum thereof, is immaterial. A memorandum of the contract can have no higher force than the contract itself, and if the contract fails to comply with the requirements of the statute, the memorandum itself must be equally insufficient. As a memorandum merely, the document so filed was insufficient, by reason of its

failure to set forth "a statement of the general character of the work to be done," — the only statement in that regard being that it is to be "conformable to the drawings and specifications made by R. B. Young, architect, and signed by the parties, and hereto annexed," and that it is to be "three stories high." It does not set forth the material of which the building was to be constructed, or any item from which its "general character" can be ascertained; and the reference to the drawings and specifications which in another part thereof it states "are intended to co-operate so that any works exhibited in the drawings and not mentioned in the specifications, or *vice versa,* are to be executed the same as if they were mentioned in the specifications and set forth in the drawings," without having the specifications and drawings filed, renders the document as ineffective for a memorandum as for the contract itself.

The finding of the court that there had not been filed in the recorder's office a contract or memorandum containing the statements required by the statute was therefore correct, and the effect of such finding, under the provision of section 1183 of the Code of Civil Procedure, was to render the contract "wholly void" for all purposes. It cannot be the basis of a recovery by the contractor against the owner, nor can it be looked to for the purpose of determining the amount for which the owner is liable, or when any payment is to be made. In any action against him by a laborer or material-man, their rights are to be determined by other rules, and irrespective of any provision of such contract.

3. It is provided in section 1183 that the laborers and material-men "shall have a lien upon the property upon which they have bestowed labor or furnished materials, for the value of such labor done and materials furnished, whether at the instance of the owner, or of any other person acting by his authority," and also that "every person having charge of . . . . the construction of any building . . . . shall be held to be the agent of the owner for the purposes of this chapter." The same

section provides a mode in which the owner may limit his liability, viz., by causing the contract to be filed in the recorder's office, but it is only " in case of a contract for the work," duly filed, that the amount of the lien is limited by the contract price, and such limitation remains, even though the contractor " shall fail to perform his contract in full, or shall abandon the same before completion." (Code Civ. Proc., sec. 1200.) If, however, the owner does not choose to avail himself of this mode of limiting his liability, "the labor done and materials furnished by all the persons aforesaid, except the contractor, shall be deemed to have been done and furnished at the personal instance of the owner, and they shall have a lien for the value thereof." But in order that the laborer or material-man may preserve and enforce this lien, he must file his claim therefor in the recorder's office, with as much specification and within the same time as if he had himself made a direct contract for such labor or material with the owner. (*Southern California Lumber Co.* v. *Schmitt*, 74 Cal. 625.)

Section 1187 declares that " every person, save the original contractor, claiming the benefit of this chapter, must, within thirty days after the completion of any building," file his claim of lien with the county recorder. If the contract is " wholly void," there is neither a " contract " nor an " original contractor," and in such case every person claiming a lien must file his claim within thirty days after the completion of the building, as he is required to do whenever he makes a direct contract with the owner in person. (*Sparks* v. *Butte Co. M. G. Co.*, 55 Cal. 389; *Schwartz* v. *Knight*, 74 Cal. 432.) The filing of a claim before the completion of the building is premature, and confers no right. (*Roylance* v. *San Luis Hotel Co.*, 74 Cal. 273.) In the absence of any statutory qualification or definition of the term " completion," there would be no room for its construction by the court, but it would be construed to mean actual completion, and would be a question of fact to be determined in each case. The statute has, however, pro-

vided that a substantial completion is all that is required in any case, whether the work be done at the direct instance of the owner, or under the provisions of a contract between him and an original contractor, by declaring that a " trivial imperfection " shall not be deemed such a lack of completion as to prevent the filing of a lien. (*Harlan* v. *Stufflebeem*, 87 Cal. 508.) What constitutes a trivial imperfection is still a question of fact in each instance. So, too, the provision that " cessation from labor for thirty days " shall be deemed equivalent to a completion is, by the express terms of the statute, made applicable to an " unfinished contract," as well as to an " unfinished building." These are the only universal exceptions to the rule requiring that the lien shall not be filed until after completion of the building.

The statute has, however, in a limited class of cases, made another exception to the rule which requires actual completion of the building before the claim of lien can be filed. In this exception, however, it has placed a limitation to the extent of the exception, making it applicable only in certain designated cases, so that if any one would avail himself of the exception, he must show that he is within the limited class for which the exception was made. It is provided in section 1187 that, "in case of contracts," the occupation or use of the building by the owner, or his acceptance of the building, shall be deemed conclusive evidence of completion. This exception to the general rule is, by its terms, of limited application, and can be invoked in behalf of the claimant only " in case of contracts "; and the " contract " which is here referred to is the one between the owner and him who is termed the " original contractor," under which, and subject to whose terms, the laborer and the materialman must enforce their liens. One object of this provision is apparent: that the owner and the contractor shall not, by a secret agreement between themselves, abandon the original contract before its completion, or dispense with the completion of the building according to its original plan, and thereby, by being able to show

that the building has never been in fact completed, prevent the laborer and material-man from enforcing their liens. Another reason for the provision is found in the requirement of the statute, that in all contracts the owner shall retain twenty-five per cent of the contract price until the expiration of thirty-five days after the time fixed in the contract for its completion; and in order that the thirty days within which others than the contractor may file their claims of lien shall commence at the same time with the thirty-five days, it is provided that his occupancy or use of the building shall be conclusive evidence of such completion. Such occupancy or use would moreover be as notorious a fact, and more readily established by the claimant, than the fact of actual completion. The occupation or use, however, which under the statute is to be deemed conclusive evidence of completion, must be open, entire, and exclusive, and not of such a character as would be consistent with a continuance by the contractor in the completion of his contract; and whether in any particular case there has been such occupation or use must be determined from the facts of that case, as in the ordinary case must be determined the fact of actual completion. The owner must be shown to have acted towards the contractor and in reference to the building in such a way as by necessary implication to give notice that the building had been accepted by him in satisfaction of the contract. A continuance by the contractor in the work of completing his contract, while the building or a portion thereof should be occupied by the owner, or even used by him for the purpose for which it was intended, would prevent such occupation or use from being regarded as conclusive evidence of completion.

The provision of the statute that this conclusive evidence of completion shall be applicable only "in case of contracts" makes it essential that the claimant who would invoke the provision in support of his claim of lien, filed before the actual completion of the building, shall show that at the time of such occupation or use

by the owner there was a subsisting and valid contract, under which the building was being constructed. If there was no original contract for its construction, or if the one which had been actually entered into had become "wholly void," the condition which the statute has prescribed for the application of the exception would not exist, and the claim could not be filed until after the actual completion of the building, or until after there had been a cessation from labor for thirty days upon the unfinished building.

The court finds, in the present case, that the college building was not actually completed until the 21st of April, and it finds that the notices of lien, with the exception of those filed on behalf of the plaintiff Willamette Steam Mills Company, the plaintiff Thompson, and the plaintiffs McLeod & O'Leary, were filed prior to that date. It follows, with the exception of the three plaintiffs above named, that judgment should have been rendered in favor of the appellants.

4. The motion on the part of the college company to amend its answer was properly refused, for the reason that the matters sought to be presented in such amendments were immaterial. Inasmuch as by a failure to file the contract in the recorder's office it became wholly void, it was not available as a defense for any purpose, either to determine the amount of the contract price, or to limit the liability of the appellant, or as the foundation of a right to complete the building according to its terms.

The judgment and order denying a new trial are reversed as to the respondents the Los Angeles Planing Mill Company, the California Door Company, the Harper-Reynolds Company, B. A. Breakey, and Charles B. Tidball *et al.*, and the court is directed to enter judgment upon its findings in favor of the appellant as against the said respondents; and as to the respondents Willamette Steam Mills Lumbering and Manufacturing Company, Robert Thompson, and McLeod & O'Leary, the order denying a new trial is affirmed, and the court

below is directed to enter its judgment directing a sale of the premises described in the action, and the application of the proceeds thereof to the satisfaction of the amounts for which it finds that the said respondents respectively are entitled to liens thereon.

GAROUTTE, J., McFARLAND. J., PATERSON, J., and SHARPSTEIN, J., concurred.

Rehearing denied.