[No. 14664. In Bank. — October 4, 1892.]

# MARBLE LIME COMPANY ET AL., RESPONDENTS, *v.* LORDSBURG HOTEL COMPANY, APPELLANT.

MECHANICS' LIENS — CONSOLIDATION OF ACTIONS — FINDINGS. — Where several actions for the foreclosure of mechanics' liens are consolidated, it is better to have only one set of findings in the consolidated action; but the mere fact that the court makes separate findings in each of the cases is not in itself sufficient cause of reversal.

ID. — COMPLETION OF BUILDING — CESSATION OF WORK — CONTRADICTORY FINDINGS. — The findings are not contradictory because stating a date of completion of the building, and also that it was never actually completed, where they show that the work ceased on a certain day, and such cessation continued for more than thirty days, which facts constitute a "completion," under section 1187 of the Code of Civil Procedure.

ID. — TIME OF FILING LIENS. — Where it appears that the work continued without a cessation of thirty days until a specified date, when it ceased for more than thirty days, and that within thirty days after the expiration of thirty days from the date of the final cessation of work the liens were filed, such liens appear to have been filed in time.

ID. — QUESTIONS OF FACT — COMPLETION — TRIVIAL IMPERFECTION — CONTINUANCE OF WORK — CESSATION — FINDINGS — EVIDENCE. — The questions whether there was a completion, or a trivial imperfection, or a continuance of work during a certain period, or a cessation of work for thirty days, are questions of fact upon which it is proper that the court should find directly, without finding the evidence in regard to such facts.

ID. — FORMER CESSATION FOR THIRTY DAYS — BURDEN OF PROOF. — Where a lien is assailed on the ground that work had formerly ceased for a period of thirty days before the last cessation of work, the burden is on the owner of the building to show that such cessation actually occurred, and it is not enough to show that it might have occurred.

ID. — WHAT CONSTITUTES "CESSATION" — NOTICE — CLANDESTINE STOPPAGE AND PRESUMPTION INSUFFICIENT. — In order to constitute a "cessation from labor for thirty days," such as will bar a lien if not filed within thirty days thereafter, within the meaning of section 1187 of the Code of Civil Procedure, the cessation should be of such character as to carry some charge of notice to a careful person; and it is not sufficient that there be a mere clandestine stopping of actual work for thirty days, and then beginning it again without any *indicia* to the world that it had been stopped for thirty days.

ID. — ABANDONMENT BY CONTRACTOR. — The abandonment of work upon a building, by a contractor, before its completion does not necessitate the filing of lien within thirty days thereafter, where the owner goes on with the work, and does not occupy or accept the building.

ID. — "OCCUPATION" — "ACCEPTANCE" — APPOINTMENT OF PAINTER AS KEEPER. — The appointment, by the owner of the building, of a painter as keeper, and the fact that he lives in it while painting it, after the contractor has abandoned the work, does not constitute an "occupation" or "acceptance" of the building by the owner within the meaning of section 1187, which only applies in case of contracts.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Charles Cassat Davis,* and *John W. Mitchell,* for Appellant.

*Chapman & Hendrick, Rolfe & Freeman, W. S. Wright, Metcalf & Metcalf, Charles L. Batcheller,* and *H. C. Rolfe,* for Respondents.

McFARLAND, J. — This is a consolidation of four actions, brought under the mechanic's lien law, to enforce liens against a building and land owned by the Lordsburg Hotel Company, a corporation.   Judgment was rendered for the plaintiffs, and the hotel company appeals from the judgment and from an order denying a new trial.

There are elaborate briefs on file, — those of appellant covering quite a wide range of subjects.   Appellant's contention, however, is resolved into two main propositions: 1. That the findings are defective; and 2. That the chief finding of fact is not warranted by the evidence.   But the real point aimed at is, that plaintiffs' liens were filed too late.

1. The court below put its findings in the form of separate findings in each of the four cases.   Such action was hostilely criticized in *Willamette Co.* v. *College Co.,* 94 Cal. 229; but in that case there were also separate judgments, while in the case at bar there is only one judgment.   It is, no doubt, much better to have only one set of findings.   Such a course avoids needless repetitions of facts common to all the cases, prevents possible complications and inconsistencies, and is altogether the clearer and more orderly method.   But the question is one mainly of good taste and correct method, and the mere fact that a court adopts the course pursued in the case at bar is not in itself a sufficient cause for reversal.

It is contended that the findings in two of the cases are fatally contradictory, because it is found in one place

that "the building was completed on the second day of August, 1889," and in another, that it "was never actually completed." It is clear, however, that the real facts found were, that although the building was never actually completed, work on it continued until the second day of July, 1889, on which day work ceased, and the cessation of work thence continued for more than thirty days. These facts constituted a "completion" under section 1187 of the Code of Civil Procedure, and we do not see that any harm was done by putting the finding in both forms, although one, perhaps, would have been sufficient.

Appellant's counsel contend very strenuously that the court did not find enough of facts.

The pivotal point in the case is, as before stated, whether or not plaintiffs' liens were filed in time: Upon this point the court found that work continued without a cessation of thirty days until July 2, 1889; that it then ceased for more than thirty days; and that within thirty days thereafter the liens were filed. If these facts were truly found, then the liens were filed in time. But counsel contend that the two findings first named are not findings of fact, but were conclusions (of law, we suppose) based on facts not found. Certain witnesses gave certain testimony; and as we understand counsel, that testimony should be considered as establishing certain facts which should have been found, so that it could be seen whether these facts justified the findings above noticed. But this method of converting testimony into facts might be applied to any case, and would lead inevitably to this result, that the court should find evidence. It would also lead to such complications and refinements on the already much vexed subject of findings as would bewilder justice. It was stated in *Willamette Co.* v. *College Co.*, 94 Cal. 229, that whether there was a "completion," and whether there was a "trivial imperfection," were questions of fact; and it is quite clear that whether there was a continuance of work during a certain period, or "cessation" for thirty days, are also

questions of fact. We think, therefore, that the court in the case at bar found the facts, and the only facts necessary to be found. Appellant's claim for a reversal must rest, therefore, upon the contention that the evidence does not support the findings.

2. Appellant contends that the evidence does not warrant the finding that the building was never actually completed, or the finding that work "was continued to the second day of July, 1889, without cessation for a period of thirty consecutive days intervening at any time," and that " on July 2, 1889, labor on said building was done." (It is not disputed that work was begun in September, 1887, or that there was no work done after July 2, 1889, or that the liens were filed within thirty days after August 2, 1889.)

It appears from the evidence and pleadings, and is not disputed, that in August, 1887, the appellant made a written contract with one Boggs for the building of the hotel, not including, however, the painting; that neither said contract nor any memorandum thereof was recorded, as required by the code; that Boggs commenced work on the hotel early in September, 1887, and continued work under the contract until July, 1888, when he abandoned it; and that thereupon the appellant continued the construction of the building. It is also clear and undisputed that at the time Boggs quit, B. J. Davis was engaged in painting the hotel under the employment of the appellant; that about that time, or shortly afterwards, Davis was also employed by appellant, as keeper, to take charge of the building, and that he did take charge of it and lived in it until July 3, 1889; that he continued his work of painting — taking charge of the house, also, and living in it — until some time in May, 1889 (except as to an asserted former cessation); that he did his last work on July 3, 1889; that no other work was done on the building thereafter; and that the first story, or basement, of the hotel has never been painted at all. There was also evidence tending to show, and from which the court below might well con-

clude, that it was the intention of appellant to paint the basement; that it was not painted because there was a misunderstanding between appellant and said Davis about the latter's duty under his contract to paint said basement; and that without the painting of said basement, the said building was not completed. Davis himself swore that "when I quit work (July 3, 1889), the building was not completed."

It is contended by appellant that it should have been found from the evidence that Davis substantially ceased to work in the spring of 1889, because the work done by him afterwards was trivial in character, consisting mostly of improving or "touching-up" some of his former work and painting a tin water-spout. It is also contended that as, under the evidence, it was possible for a prior period of thirty days to have elapsed *before* July, in which Davis did not actually do any work, therefore the court ought to have found that there *was* a prior period of "cessation of labor" for thirty days.

It is admitted, however, that work was done in May, 1889. It also clearly appears in the evidence that at least three days' work was done in June, and that work was done on July 2d or 3d. It is true that it does not appear positively on what days in May the work in that month was done, or on what days it was done in June; and it is, no doubt, *possible* that the former was done in the early part of May and the latter in the latter part of June, in which event there *might* have been no actual work for a period of thirty days commencing in May and ending in June. But if such had been the fact, the burden was on appellant to show it, and at all events, it was not the duty of the court to find such fact from the evidence before it.

As to the work being trivial, that was a question for the court below, — even if that question could be considered as material when the issue is as to cessation of work. "Trivial imperfection," as used in the code, relates to the question whether or not there has been an actual completion of the building. Neither do we think it ma-

terial that Davis was not paid for the work done in June, or that appellant had not expressly ordered it to be done; it was work which it was his duty to do, in order to complete what he had before done imperfectly.

But the peculiar circumstances in this case suggest the question, What evidence is necessary to show such a "cessation from labor for thirty days," within the meaning of section 1187 of the code, as will bar a lien if not filed within thirty days thereafter? Those words certainly do not mean a mere clandestine stopping of actual work for thirty days, and then beginning it again without any *indicia* to the world that it had been stopped for thirty days. They were not contrived as a means of defrauding lien-holders. The cessation should certainly be of such character as to carry some charge of notice to a careful person. In *Mill and Lumber Co. v. Olmstead*, 85 Cal. 80, cited by appellant, the point involved, and the only point decided, was, that a lien claimant must file his lien within thirty days after a cessation of labor for thirty days, and that the provision of the code on that subject was not, as contended, a mere privilege to the claimant, but also a limitation. But there was no question in that case as to the actual "cessation of labor for thirty days," or as to the meaning of those words. Moreover, the plaintiffs there had knowledge of the cessation. The court, in its opinion, says: "On the ninth day of April, 1887, the contractors quit work on the building and refused to finish it, and no work or labor was done thereon for more than thirty days thereafter. The plaintiff *had notice* of this cessation of labor upon the building for thirty days *at the time thereof*." It is quite evident that the contractor publicly quit work and left the premises, and that the plaintiff actually knew of this fact, and of the fact that no more work had been done by any one for more than thirty days thereafter.

But in the case at bar, when Boggs abandoned his contract for his part of the work, Davis was engaged in doing the painting; and so far as appearances indicated to respondents or to the world, he remained in that same

situation until July, 1889. He stopped at the building all the time; there is no pretense that he removed his painting material, or his brushes, or any of the implements by which he carried on his trade; he did work on the building at intervals, at least, until July 3d, and the painting was then still unfinished; and there is no pretense that respondents knew or had any reasonable grounds for suspecting that he had let thirty days go by at any one time without doing some work. Under these circumstances we do not think that the court erred in finding that work had continued until July. Whatever may be thought of the hardships which the present lien law sometimes imposes upon the owners of buildings, still, courts cannot undertake to break its force by refusing to apply to the rights of lien claimants the ordinary rules of evidence and the common principles of fair dealing.

These views apply, also, to the contention of appellant that there was still another cessation of labor for thirty days prior to May, 1889.

The contention that the time for filing liens expired when Boggs quit is not tenable. In the first place, there was no "occupation" or "acceptance" of the building within the meaning of section 1187; and in the second place, the provision about "occupation," etc., applies only "in case of contracts."

In the findings in one of the cases (the Smilic case) it is made to appear—incorrectly, of course, and no doubt inadvertently — that Boggs continued his work until August 2, 1889, and completed his contract on that day. Appellant makes some criticism of this finding, although we do not understand it to be seriously contended that the finding constitutes material error. The finding, taken as true, does not substantially change the positions or rights of the parties.

The learned arguments of counsel for appellant run into many ramifications and by-paths, but we think that we have sufficiently noticed their main contentions. We see no good reason for disturbing the judgment.

The judgment and order appealed from are affirmed.

PATERSON, J., SHARPSTEIN, J., and DE HAVEN, J., concurred.

Rehearing denied.