[L. A. No. 17471. In Bank.—October 2, 1940.]

JOHN B. BECHTOLD et al., Respondents, v. BISHOP & COMPANY, INC. (a Corporation), et al., Appellants.

HARRY T. McKINLEY et al., Respondents, v. BISHOP & COMPANY, INC. (a Corporation), et al., Appellants.

Sarau & Thompson and Roy W. Colgate for Appellants.

Kenneth Evan Schwinn for Respondents.

THE COURT.—These two causes, denominated the "Mc-Kinley case" and the "Bechtold case", were consolidated prior to trial, and were heard by the court sitting without a jury. Separate findings of fact, conclusions of law, and judgments were entered in favor of the respective plaintiffs, and will be considered as one document. (*Union Lumber Co.* v. *Simon,* 150 Cal. 751 [89 Pac. 1077]; *Willamette etc. Co.* v. *College Co.,* 94 Cal. 229 [29 Pac. 629]; *Stanton* v. *Superior Court,* 202 Cal. 478 [261 Pac. 1001].) An appeal has been taken by all of the defendants except John G. Baker, on the ground that certain findings are not supported by the evidence.

Shortly after ten o'clock on the clear dry morning of March 2, 1937, Ethel Gladys McKinley and Rachel A. Bechtold were riding in a 1927 Model T Ford coupe as guests of defendant Baker. Baker was driving easterly on Jurupa avenue, in Riverside county, toward a point where the avenue, at an angle slightly northeast-southwest, crosses Garnet street, a north-south arterial highway. At the same time defendant West was driving a heavy truck north on Garnet street toward the same crossing. On each side of the avenue at the entrance to the intersection, stop signs had been erected in the customary manner, and on the westerly side the word "STOP" was painted on the pavement. The view of those approaching the crossing from the south or west was at least partially obscured by rows of eucalyptus trees. The automobile and the truck came together in the intersection a few feet south of the center line of Jurupa avenue and

east of the center line of Garnet street. The truck struck the right rear side of the automobile, causing it to slide to the northeast, and overturn. Mrs. McKinley was injured seriously, and Mrs. Bechtold fatally.

The Bechtold action was brought under section 377 of the Code of Civil Procedure by the surviving husband and two sons of Mrs. Bechtold, to recover damages for her death. The other action was brought by Mrs. McKinley and her husband to recover for her injuries. The defendants were Baker, truck driver West, his employer, Bishop & Company, and the owner of the truck, National Biscuit Company. In the Bechtold case judgment was rendered for plaintiffs in the sum of $12,418.16, and in the McKinley case in the sum of $17,250. These judgments ran against all of the defendants, except that in the Bechtold case, due to absence of an allegation of agency of the truck driver for National Biscuit Company, the liability of that company was limited to $5,000.

The trial court found on conflicting evidence that Baker was guilty of wilful misconduct in that he wilfully and wantonly failed to stop the Ford coupe at the westerly stop sign on Jurupa avenue, and carelessly and recklessly drove into the intersection without regard to traffic on Garnet street, thereby proximately causing and contributing to the collision with the truck. As no appeal was taken by Baker, this finding is conclusive as to him. The court also found that West, while acting in the scope of his employment, so carelessly and negligently operated the truck as to proximately cause it to collide with and run into the automobile, and that as a direct and proximate result of the said wilful misconduct of Baker and carelessness, recklessness, and negligence of West, concurring and contributing jointly to cause the accident, the plaintiffs were injured as aforesaid.

Appellants contend that the record does not contain any substantial evidence to support the finding that West was negligent. Testimony on this issue was given by West, by Baker, Mrs. McKinley, and disinterested witnesses.

Both Baker and West were familiar with the intersection. West testified that he had driven over that portion of Garnet street once or twice a month for six or seven years. He stated that just prior to the accident, when he was 500 feet south of the intersection, he was traveling at a rate of 40 to 45 miles an hour in "over-drive", the fifth or fastest gear effective only when the truck was running at a speed of 30

to 40 miles an hour or more. He commenced to slow down, touching his brakes three or four times, and when within 100 feet of the intersection, his rate of travel had decreased to 20 or 25 miles an hour. He applied the brakes a fifth time when he was about 25 feet from the crossing. At a distance of 20 feet he had to cross a railroad track which paralleled Jurupa avenue. At about that point he "stood on his brakes", and continued to "ride" them up to the moment of collision. He first saw the Ford when he was 100 to 125 feet south of the intersection. It was then approximately the same distance west, and was traveling between 15 and 20 miles an hour. He next saw it "coming out of the trees" into the open, 35 to 40 feet from the crossing. He was then also about a like distance south, 40 feet, traveling at approximately 15 miles an hour. He watched the Ford "continuously the last 40 feet" as it approached the edge of the intersection. Its speed of 15 to 20 miles an hour did not vary, nor did it stop before proceeding into the crossing. Up to the time it reached the arterial point, he expected it to stop; when it did not—the truck then being 20 to 25 feet from the center of the intersection and 18 feet from the point of collision—he "got up" on his brakes, grabbed the wheel, and used all the energy he had to avoid a collision. When he entered the intersection he was not going over five miles an hour. He did not and could not swerve the truck to right or left. Its front end hit the right side of the Ford at a point about four or five feet south of the center line of the avenue and two to six feet east of the center line of Garnet street. The right rear wheel of the Ford seemed to be "hung up" on the bumper of the truck, until the Ford slid north, started to wabble, and turned over. The truck stopped at about the center line of the avenue.

A traffic officer reached the scene shortly after the accident, talked with the parties, and made a record of the physical evidences of collision, skid marks left by the Ford, etc. Apparently no marks were left by the truck. Testing its brakes, the officer found that their application did not cause the wheels to slide, and that they were "fair".

Two ladies who were standing in a driveway off Garnet avenue, about 200 feet south of the intersection, testified that they noticed the truck passing that point at a speed of about 30 miles an hour. They did not see the collision, but they

heard the noise caused by it, and immediately rushed to the scene.

A nine-year-old school boy, who was standing in the driveway of his home near the northwest corner of the intersection testified that he observed the Ford as it traveled easterly to the point of collision, and that it was "going pretty fast", and made no arterial stop before entering Garnet street.

Baker testified that when he was about 100 feet west of the intersection, he was traveling about 15 miles an hour, and that as he continued easterly, he slowed down. In obedience to the arterial sign, he stopped before starting over the crossing. He looked north and south on Garnet street and saw no vehicle. He then proceeded at a speed of from five to eight or ten miles an hour. About the time he reached the center of the intersection he again looked to the south and saw the truck 400 or 500 feet away, traveling from 45 to 55 miles an hour. He continued across the street, which is paved to a width of 18 feet, and when he was four or five feet beyond the center line, he again saw the truck. It was from 5 to 15, or maybe 20, feet to his right, coming toward him at the same speed. He tried to increase his speed and turned slightly to the left, but the truck crashed into the right rear of the Ford. At the time of the collision the front wheels of the Ford had passed completely over the intersection and a few feet more of travel would also have brought the rear wheels beyond the crossing line.

Mrs. McKinley also stated that the Ford made an arterial stop before entering the intersection. She stated that as it neared the stopping point, going about 18 miles an hour some 50 feet from it, she glanced up from her lap, where she was sorting letters for mailing, and looked 450 or 500 feet both ways on Garnet street. She saw no vehicles and returned her attention to the letters in her lap. When she heard Mrs. Bechtold scream, she raised her head and looked out of the window to her right. She saw the truck bearing down on them, about two feet away. The truck was traveling 45 miles an hour "easy", and the Ford five or six miles an hour. Before she could turn her head away, the collision occurred.

Appellants urge that the testimony of both Baker and Mrs. McKinley is discredited by the conclusive finding of wilful misconduct on the part of Baker, and that except for said discredited testimony, the record is utterly devoid of any evidence of sufficient substantiality to support the finding

that West was negligent. Their argument is this: Accepting as a premise the finding that Baker was guilty of wilful misconduct, which is tantamount to accepting as a fact that he intentionally, deliberately, and wantonly drove into the intersection and the path of the oncoming truck, without making a boulevard stop and with express or implied knowledge that the probable result of such act would be injury to his guests (*Hagglund* v. *Nelson,* 23 Cal. App. (2d) 348 [73 Pac. 265] ; *Meek* v. *Fowler,* 3 Cal. (2d) 420 [45 Pac. (2d) 194]), it must follow that such wilful misconduct was the sole proximate cause of the collision. West was entitled to assume, while approaching the intersection, that the Ford car would make the required arterial stop and could not be charged with negligence for acting upon that assumption (*Gritsch* v. *Pickwick Stages,* 131 Cal. App. 774 [22 Pac. (2d) 554]). When he discovered that the Ford was not going to stop, his conduct under the circumstances was that of a reasonably prudent man. So far as the testimony of Mrs. McKinley is concerned, her statement that the Ford did stop before entering the intersection must, under the conclusive finding of Baker's wilful misconduct, be taken as untrue. Her estimate as to the speed of the truck just prior to the moment of impact must be regarded as incredible. If, as she stated, the truck was moving at a rate of 45 miles an hour, she could have had it under observation but an infinitesimal fraction of a second, which was too brief a time for anyone in her position to estimate the speed of its approach. Even if it was traveling but five miles an hour, as claimed by West, the time and distance were still too short to afford opportunity for a credible estimate. Moreover, mathematical calculation demonstrates that if the Ford and the truck had been traveling the respective distances at the respective speeds estimated, the collision would not have occurred as it did. Hence, the testimony of both Baker and Mrs. McKinley must be considered as inherently untrue.

Appellants' argument is one which might be persuasive if addressed to a trial court. Addressed to an appellate court, it fails to carry conviction. In this state the credibility of a witness and the weight to be accorded to his testimony are questions directed to the trial judge, who under proper circumstances may accept all or such part of the testimony of any witness as he believes to be true, or may reject all or any part which he believes to be untrue. (*Pe-*

*drow* v. *Federoff,* 77 Cal. App. 164 [247 Pac. 212] ; *Bushey* v. *Union Oil Co.,* 13 Cal. App. (2d) 350 [56 Pac. (2d) 1272] ; *Winning* v. *Board of Dental Examiners,* 114 Cal. App. 658 [300 Pac. 866], and cases cited.) ▮ Thus in the present case, although it is evident from the finding of wilful misconduct that the trial court disbelieved many of the statements of Baker and Mrs. McKinley, particularly those with reference to the making of an arterial stop, it does not necessarily follow that their testimony as a whole was rejected and discredited. Statements made by them which were not inconsistent with the finding of wilful misconduct, or which had no bearing on that issue but did tend to establish lack of due care on the part of West, must therefore be accepted as evidence in support of the finding that West was negligent and that his negligence was a contributing proximate cause of the accident. ▮ The fact that their estimates of speed and distance were inexact from the standpoint of mathematical calculation, and that Mrs. McKinley had but a fraction of a second in which to appraise the situation, does not stamp the testimony with inherent incredibility. The impressiveness of an event, more than the' element of time, may serve to etch a vivid mental picture. Intersection collisions are generally occurrences which take place in split seconds, and yet parties and witnesses are usually able to detail such happenings with substantial accuracy.

Both Baker and Mrs. McKinley testified that on entering the intersection they looked up and down Garnet street and saw no vehicle approaching, and that when they did see the truck it was bearing down upon them at so great a speed that the collision could not be avoided. This version is as plausible as that of the truck driver to the effect that he entered the intersection at a speed of not over 5 miles an hour and yet had insufficient opportunity to stop the truck. In short, that part of the testimony of Baker and Mrs. McKinley which may have been credited by the trial court affords support for the view that under the circumstances the speed at which West drove into the intersection was excessive, and his conduct was not that of a reasonably prudent man. Further support for the same conclusion is found in the physical facts as testified to by the traffic officer, and in the testimony of the witnesses other than Baker and Mrs. McKinley. Admittedly the automobile must have entered the intersection ahead of the truck. It had practically completed the crossing at the

time the truck crashed into its right rear side. The truck driver, according to his own statement, had observed its progress for a considerable distance, and yet his speed was such that when the collision occurred the impact was of sufficient force to slide the automobile forward a number of feet and cause it to overturn, while the truck continued forward the full distance within which it should have been stopped by application of the brakes alone, without the additional slowing caused by the temporary weight of the Ford, "hung up" on its bumper. The truck driver was not entitled to rely upon the fact that the Ford did not make the required arterial stop as absolving him from all responsibility. The trial court, of course, had the advantage of hearing the witnesses and observing their manner while testifying. He visited the scene of the accident, and also inspected the Ford coupe. Under this record it cannot be said that its finding as to the negligence of West is not sufficiently supported by evidence of a substantial character.

■ Appellants complain that the trial court failed to find upon a material issue. The basis of this contention lies in the fact that although the court found the amount of special damages suffered in each case, and made a detailed finding describing the general damage, it specified the amount of the general damage in the conclusions of law and not in the findings. This was not reversible error. The specification of the amount of general damage, although mistakenly classified as a conclusion of law, may be regarded as a finding of fact. (*Linberg* v. *Stango,* 211 Cal. 771 [297 Pac. 9, 75 A. L. R. 555] ; *Roloff* v. *Hundeby,* 105 Cal. App. 645 [288 Pac. 702] ; *Gustafson* v. *Blunk,* 4 Cal. App. (2d) 630 [41 Pac. (2d) 953].)

■ Appellants assert that the award in the Bechtold case is excessive. It is elementary that the assessment of damages is a matter committed to the discretion and sound judgment of the trier of facts, whose conclusion will not be disturbed by an appellate court unless the sum awarded is so disproportionate to the injury proved as to justify the view that it was given under the influence of passion or prejudice. (*Meek* v. *Pac. Elec. Ry.,* 175 Cal. 53 [164 Pac. 1117].) ■ In the present case the evidence showed, and the court found, that Mrs. Bechtold was 56 years of age at the time of her death and had a life expectancy of 16.89 years. Her husband, one of the plaintiffs, was 68 years of age, and had a

life expectancy of 10.23 years. The couple had been happily married for over 41 years. Their sons, the other two plaintiffs, were 32 and 40 years of age, having respective life expectancies of 33.03 and 25.09 years. They did not reside with their parents. Mrs. Bechtold was an able-bodied woman, well in mind and body, and loving and affectionate to her husband and sons, who reciprocated the feeling. She performed the ordinary household duties for her husband and was an exceptionally good cook and housekeeper. Her death deprived plaintiffs of her love, society, comfort, companionship, counsel, protection, care, and services in keeping and maintaining the home.

Appellants claim that these facts were not sufficient to establish the pecuniary loss, if any, suffered by the adult sons from their mother's death, or the pecuniary value of her services, or to justify the award of $418.16 special damages, and $12,000 general damages, with $5,000 limitation of liability as to defendant National Biscuit Company. The pecuniary value of the services of a wife or mother is not susceptible of measurement by any uniform standard of market value. Evidence of the general type here adduced is commonly used as a basis of computation of damages of this character. (*Meek* v. *Pac. Elec. Ry.*, *supra*.) While the award made by the trial court in this case is liberal, it is clearly not so excessive as to justify the conclusion that it was impelled by passion or prejudice, and therefore it will not be disturbed. (Compare awards in *Bach* v. *C. Swanston & Son*, 105 Cal. App. 72 [286 Pac. 1097], and cases there reviewed; *Hill* v. *Peres*, 136 Cal. App. 132 [28 Pac. (2d) 946]; *Nitta* v. *Haslam*, 138 Cal. App. 736 [33 Pac. (2d) 678].)

Likewise without merit is appellants' claim that excessive damages were awarded to Mrs. McKinley and her husband. They had judgment for the sum of $17,250. The trial court found among other things that at the time of the accident Mrs. McKinley was 34 years of age, had two minor children, and was performing all of the housework and duties of a wife and mother. As a result of the collision she sustained severe injuries, lacerations almost severing the left ear from her head, a compound fracture of the right mandible, a fracture of the maxilla, the loss of several teeth, destruction of a portion of the bone of the lower right mandible, resulting in abscesses which cause permanent and disfiguring scars

upon the right side of her face, a definite elevation of the right side of the jaw or mandible causing asymmetry of the face so that the normal side is definitely lower than the right side, a fifty per cent loss of hearing in the left ear, which is permanent, injury to right arm with permanent scar therefrom and limitation in the use of the arm resulting from a fracture of the greater tuberosity of the right humerus, a fracture of the right *os pubis* of the pelvic arch, and severe shock to the entire nervous system. Prior to the injury she was in good health, but since she has suffered and will suffer great pain and mental anguish and her health will be permanently impaired, and she will permanently sustain unsightly, disfiguring and repulsive face scars and partial deafness.

Appellants claim that these findings are only partially supported by the evidence and that they exaggerate the extent of Mrs. McKinley's injuries, and of her permanent disfigurement, or loss of beauty. The record does not show that this is the case. So far as the extent of facial disfigurement and permanent injury is concerned, the trial court had ample opportunity, while listening to Mrs. McKinley's testimony, to observe her appearance. The fact that this physical evidence was available to him, coupled with a consideration of the comprehensive testimony of medical experts, and other witnesses, compels the conclusion that there is ample support in the record for the findings in question and that the award is not so excessive as to justify intervention by an appellate court.

The judgments are, and each of them is, hereby affirmed.