[Civ. No. 13105.   First Dist., Div. Two.   May 5, 1947.]

W.  Q.  WRIGHT, Appellant, v. DELTA PROPERTIES, INC. (a Corporation) et al., Respondents.

James F. Hoey, Linforth, Cannon & Miller and A. Dal Thomson for Appellant.

Byrl R. Salsman for Respondents.

NOURSE, P. J.—This is an action for an accounting and for the establishment of a trust in real property based on a joint venture allegedly having existed between plaintiff W. Q. Wright and Theodore V. Halsey, the predecessor of defendants. The trial court found against the existence of a joint venture and plaintiff appeals.

In the early nineteen twenties appellant, W. Q. Wright, a civil engineer, organized the Wright Corporation for the exploitation of certain tracts of delta land which had belonged to his father. Appellant was at all times president and general manager and, after he had taken over on credit the interest of his sister, who married Theodore V. Halsey, was also the majority stockholder of the corporation, holding 80 per cent of its stock. The Wright Corporation issued to the public $600,000 bonds secured by most of the real property of the corporation. When in the 1929 depression the bonds defaulted there were still $441,500 outstanding; moreover, there were at that time unsecured debts amounting to some $100,000. A Bondholders' Protective Committee and a Board of Trade Committee for the unsecured creditors were formed; appellant was continued in his position. For several years, during which these conditions prevailed unchanged, appellant tried to interest his brother-in-law T. V. Halsey in different plans for the reorganization of the company. Although T. V. Halsey in the course of time loaned the corporation more than $100,000 in security not subject to the bonded loan, it was not until late in 1935 that plans for decisive changes took shape. Under date of December 18, 1935, a memorandum of an agreement between appellant and T. V. Halsey was prepared by Mr. Gray, then T. V. Halsey's attorney, for signature by the parties. It provided in part that Halsey would offer to buy the outstanding bonds of the Wright Corporation at 20 per cent of their face value, that he would advance $7,500 for certain expenses and as security, that appellant would aid Halsey to obtain the bonds, and if the same were acquired, to organize a new corporation which would purchase and operate the properties which secured the bonds and that the common stock of the new company would be divided 49 per cent to appellant and 51 per cent to Halsey. It does not provide how the means to finance the operation would be obtained. This memorandum was never signed. Nevertheless, it plays an important role in this suit.

On January 10, 1936, T. V. Halsey made to the Bondholders' Protective Committee an offer the provisions of which were in accord with those of the unsigned memorandum. It stated that Halsey in making this offer was acting for unnamed principals friendly to the Wrights. The Protective Committee submitted the proposal to bondholders but the completion of the transaction was delayed by the fact that on April 14, 1936, T. V. Halsey suffered a stroke which kept him away from his office until August. On May 29, 1936, A. E. Halsey, who was employed by his brother T. V. Halsey as an assistant with respect to his real estate interests —T. V. Halsey was primarily a telephone corporation executive—asked appellant's cooperation in getting extension of the terms within which tendered bonds had to be paid. Appellant complied. At the time that T. V. Halsey made his extension request to the Bondholders' Protective Committee offering a further advance of $5,000, appellant made available a quitclaim deed of his corporation to the properties covered by the bonds and that corporation waived any remedy by which it could impede execution in case the purchase of the bonds would not be timely consummated. The extension was granted and the purchase of the bonds consummated. The funds required for the transaction were obtained by T. V. Halsey by means of a personal loan from the Bank of America. The letter in which he applied for this loan mentions a required amount of $165,000. He promised as security a first mortgage on all the properties of the corporation after foreclosure. Appellant had also made available to T. V. Halsey 90 per cent of the stock of the corporation to serve as security. At different times in the year 1936, appellant claimed in conversations that he had an interest in the properties to be acquired.

On August 20, T. V. Halsey sent appellant a letter in which he informed appellant in substance that he had acquired 80 per cent of the outstanding bonds and had demanded a trustee's sale, that he intended to purchase all the property covered by the bonded loan and that he put appellant on notice that if he would be the successful bidder he had no intention of giving any participation in the properties to the Wright Corporation or any of its stockholders. This, however, would not prevent him from employing appellant on a salary or on another basis to supervise engineering and other matters.

The trustee's sale took place September 19, 1936, and T. V.

Halsey was the successful bidder. He had organized a corporation under the name Delta Properties Inc., without any cooperation of appellant but this first corporation never functioned and did not take over the purchased properties. T. V. Halsey operated these under the fictitious name ''Delta Properties Company.'' A letter of appellant of September 19, 1936, in which he reports to A. E. Halsey on a meeting of the Board of Trade Committee for the unsecured creditors contains the following sentence: ''I repeated that there was no agreement between Mr. Halsey and myself regarding the equity, but it was my hope that something could be arranged in the future.''

Beginning September 1, 1936, T. V. Halsey paid appellant a monthly salary of $450. This salary was cut to $250 monthly by a letter of September 30, 1939, to $175 monthly by a letter of July 31, 1940, and eliminated completely by a letter of July 21, 1941, after which date appellant still performed engineering services for T. V. Halsey or his second corporation, which services were each paid for separately. The letter of July 21, 1941, uses the term ''you and other employees.''

The second corporation under the name Delta Properties Inc.,—the first had been dissolved—was organized by T. V. Halsey, his son, T. V. Halsey, Jr., and A. E. Halsey; the articles dated August 22, 1940, were filed October 30, 1941. This corporation is the respondent of that name. One of the properties sold at the trustee's sale, Jersey Island, was transferred by T. V. Halsey to it and this respondent still held title to it at the time of the trial. All other properties purchased at the trustee's sale were disposed of prior to the trial. As to these sales and the conditions of them, appellant was never consulted. One of the properties, the Wright tract, was sold in 1941 for $190,000. Also during these years appellant sometimes claimed in conversations that he had an interest in the properties sold, but until after the death of T. V. Halsey on March 10, 1943, he took no legal action nor is there any evidence that until that time he ever asserted his claim in writing. Theodore V. Halsey, Jr., the other respondent in this action, was duly appointed executor of his father's last will. This action was commenced July 17, 1943.

The complaint is in two counts, of which the first alleges an oral agreement of joint venture between appellant and T. V. Halsey for the acquisition of the outstanding bonds of the Wright Corporation and the properties covered by them, whereas the second count alleges a written agreement to the

same effect. The answer as amended denies the material allegations of the complaint and alleges affirmatively that the action is barred by the statute of limitations and the statute of frauds, that T. V. Halsey had bought the bonds and the properties covered by them for his sole account and had notified plaintiff in writing to that effect before the trustee's sale and that at the time of the purchase of the bonds and of the trustee's sale appellant was president and general manager of the Wright Corporation and therefore in a position of trust with respect to the shareholders, bondholders and unsecured creditors of which shareholders and unsecured creditors remain wholly unsatisfied and without possibility of recourse to any asset of the Wright Corporation.

At the trial appellant testified that in a conversation with T. V. Halsey, at which so far as he remembers nobody else was present, Halsey told him that he could not have a record interest, because the bank would not loan the money needed for the operation if appellant who was president of the corporation which issued the bonds would participate, that therefore the memorandum would not be signed but that the provisions outlined in it would form the agreement upon which they would operate. This was the alleged oral agreement according to appellant's theory. Moreover, he testified that in the early part of January, 1936, T. V. Halsey had promised him something in writing to protect his interest, since the memorandum was not signed, and sent him a typewritten letter reading in substance like this: ''In accordance with our understanding, I am holding in trust for you 49% of the properties which will be foreclosed under the Wright Corporation Bond Issue.'' However, this letter, which according to appellant's theory constituted the written agreement, could not be produced at the trial because it was said to have been lost. Appellant testified that two or three years after the trustee's sale A. E. Halsey had borrowed the letter and had never returned it. Appellant had never asked him to return it. (Appellant's secretary, Miss Cox, also testified that she had seen the letter.)

Appellant testified further that when he received the letter of August 20, 1936, which excluded him from participation, he went to T. V. Halsey's office to ask for an explanation and that T. V. Halsey told him that the Bank of America had required his exclusion but that he was protected by the letter Halsey had given him—the letter afterwards allegedly lost.

After this explanation he had continued his cooperation in absolute confidence in T. V. Halsey. Only when after the sale of the Wright tract for a price exceeding all the money invested in the operations appellant asked an accounting and T. V. Halsey referred him to his attorney, this confidence was shaken and appellant allegedly consulted his own attorney.

However, A. E. Halsey testified that in July, 1936, he was present at a discussion between appellant and T. V. Halsey in which appellant demanded that Halsey sign the memorandum but Halsey refused and denied that appellant had any right to the property. The letter of August 20, 1936, was drafted by the attorney Dahlquist in consultation with the witness in accordance with orders of T. V. Halsey for the purpose of repudiating any claimed interest on the part of appellant. In the middle of 1937, he was again present when appellant endeavored to have T. V. Halsey sign a typewritten letter recognizing a 49 per cent interest of appellant in the foreclosed property; T. V. Halsey again refused to sign, denying appellant's interest and referring to the letter of August 20, 1936. This witness denied that he had seen the so-called lost letter or had received it from appellant. He was told by appellant and Miss Cox of the existence of such a letter but it was never shown to him. Mr. Maxwell, T. V. Halsey's secretary, who handled all of his confidential correspondence, did not remember any such letter. Mr. Dahlquist the attorney who drafted the letter of August 20, 1936, testified that not only was the bank opposed to participation by appellant but that he, the witness, had advised against such participation in connection with the Boyd case [*Northern P. R. Co.* v. *Boyd*] (228 U.S. 482 [33 S.Ct. 554, 57 L.Ed 931]) on which unsecured creditors and bondholders whose interests were scaled down might base litigations. He had given as his opinion that appellant could however be employed as an engineer.

The trial court found in substance that there never was any agreement, oral or written, express or implied, between appellant and T. V. Halsey creating a joint venture or a trust with respect to the foreclosed properties; that T. V. Halsey in his lifetime had denied appellant's claims, that appellant all the time had notice that Halsey with respect to these properties acted only for his own benefit and that appellant's connection with the operation of them was purely as an employee of T. V. Halsey or of defendant Delta Properties Inc.

■ Appellant concedes that with respect to the existence of the written agreement, the so-called lost letter, there was sufficient conflict in the evidence that the finding of the trial court in that respect should be sustained. However, he contends that there is no such conflict in the record with respect to the existence of an oral agreement for a joint enterprise.

There is no merit in this contention. Evidently there is a substantial conflict in the evidence. Even if we do not consider any of the testimony of respondents' witnesses with respect to the attitude of T. V. Halsey—some of which might be hearsay, though competent so far as it came into the record without objection—from the undisputed facts alone that the memorandum prepared as to a possible joint venture was not signed, that T. V. Halsey wrote and appellant received the letter of August 20, 1936, which excluded appellant from participation but opened the possibility of a position as employee, and that for several years thereafter he drew salary as an employee, which salary was not foreseen in the unsigned memorandum, without reserving in any writing his pretended rights of participation or possessing any written proof of such participation, an inference can reasonably be drawn that any plan of a joint venture was abandoned and that instead appellant became a paid employee.

■ Appellant's testimony as to the oral promises and explanations allegedly given to him by T. V. Halsey, without the presence of any third person, might, if believed, have explained these facts in a way not inconsistent with appellant's allegations, but the credibility of a witness and the weight to be accorded his testimony are questions directed to the trial judge, which under proper circumstances may accept all or such part of the testimony of any witness as he believes to be true, or may reject all or any part which he believes to be untrue. *Bechtold* v. *Bishop & Co., Inc.*, 16 Cal. 2d 285, 291 [105 P.2d 984]. In view of the fact that the only person who could successfully contradict his testimony was dead, the trial court was justified in considering appellant's uncorroborated testimony with respect to these conversations as weak and unsatisfactory. *Olson* v. *Olson*, 4 Cal.2d 434, 437 [49 P.2d 827]. Moreover, appellant's admission in the letter to A. E. Halsey of September 19, 1936, that there was no agreement between T. V. Halsey and himself regarding the equity creates in itself a substantial conflict in the evidence.

■ Appellant's main argument is that the services he rendered to T. V. Halsey in giving up his holding of stock in the corporation and of some salary claims against it, in assisting to convince the Bondholders' Protective Committee to communicate and the individual bondholders to accept the offer and the request for extension of time, in facilitating the execution of the plan by making the Wright Corporation give a quitclaim deed and waive all remedies against the sale, and in rendering more extensive services than could be expected from an engineer, were of so valuable a character that it was inconceivable that he would have acted so without relying on the alleged oral agreement of joint venture. The evidence as to the extent and especially as to the value of the rights given up and the services rendered is conflicting.

To review the evidence as to this point would serve no purpose. It is certainly not inconceivable as a matter of law that appellant should give up shares in a corporation which for many years had been in default both with respect to its bonded loan and its unsecured creditors and should give assistance to his wealthy brother-in-law in acquiring the properties of that corporation without being promised a participation as joint venturer but in reliance on a promise of employment or merely in the hope that something advantageous might be arranged in the future. Even for any improbability of such an attitude as a matter of fact a showing would be required that appellant would have been able to keep his hold on the assets of the corporation if he had not cooperated with his brother-in-law. No such showing has been made. Clearly this whole argument is purely factual in character and cannot successfully be addressed to an appellate court. The evidence as to the rights given up and the services rendered by appellant is nothing more than a part of the conflicting evidence to be weighed by the trial court in deciding the existence or nonexistence of a joint venture agreement. Performing this function, the trial court found against appellant. That where there is a substantial conflict in the evidence, the findings of the trial court will not be disturbed is too basic a principle of our law to require citation of authority.

Appellant further argues that even if no precise express agreement of joint venture was proved, such an agreement should be implied from the acts and conduct of the parties. He cites in support of this argument *Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751 [128 P.2d 665] and

other cases to the same effect. However, these cases only hold that such a contract may be implied. Whether such a contract should be implied in the present case remained a question of fact for the trial judge. "Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the jury." *Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]; 10 Cal.Jur. 738-739. In our case the trier of fact decided that the evidence did not warrant the inference of an implied agreement of joint venture. Where there is a conflict in the inferences reasonably deducible from the evidence the decision of the trial court is as conclusive as where the conflict arises directly from the evidence. *Mentone Irr. Co.* v. *Redlands etc. Co.*, 155 Cal. 323, 331 [100 P. 1082, 17 Ann.Cas. 1222, 22 L.R.A.N.S. 382]; 2 Cal.Jur. 934.

In view of our conclusion that the findings and conclusions of the trial court against the existence of any joint venture agreement must be sustained, it is unnecessary for us to discuss the questions raised by the other defenses of respondents as to which the trial court did not make any findings.

The judgment is affirmed.

Goodell, J., and Dooling, J., concurred.