## THE CITY OF NEW BRITAIN *vs.* THE NEW BRITAIN TELEPHONE COMPANY ET AL.

First Judicial District, Hartford, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and CASE, Js.

The plaintiff agreed to allow the defendant, a telephone company, under certain conditions, to use all poles belonging to the city for a term of twenty years, and the telephone company, during such period, was to furnish all the city departments with telephones at a specified price per year. The contract was accompanied by a bond in which the defendant covenanted that it would keep control of its property and business, and maintain competition with its business rival during the whole twenty years. In an action to recover for a breach of this obligation, it was *held* that inasmuch as the city obtained for itself certain rights and privileges, presumably of value, it could not be said that the sole and exclusive purpose of the agreement, as gathered from the face of the instruments, was the securing of the benefits of competition in favor of the general public.

An enforceable agreement may be contained in that part of the bond called the condition.

As a general rule, parties are allowed not only to make their own contracts, but to fix beforehand the amount of damages to be paid for their breach. When, therefore, such damages are uncertain or difficult of proof, and the agreed amount is not greatly disproportionate to the presumable loss, the express intent of the parties will not be interfered with by the court.

Upon the trial the defendant offered in evidence the reasons which were urged by its attorney before the common council of the city to procure the city's assent to the agreement. *Held* that this evidence was properly rejected.

The defendant alleged in its answer that "a number of the poles" referred to in the bond were afterwards cut down by the plaintiff. *Held* that this did not constitute a defense to the action.

Argued October 3d, 1901—decided January 8th, 1902.

ACTION to recover the amount of liquidated damages in a bond given by the defendants, brought to the Superior Court in Hartford County where a demurrer to the answer was sustained in part (*Prentice, J.*) and the cause was afterwards tried to the court, *Roraback, J.;* facts found and judgment

rendered for the plaintiff for the full amount ($2,500), and appeal by the defendants for alleged errors in the rulings of the court. *No error.*

The plaintiff is a municipal corporation of this State, and the New Britain Telephone Company, one of the defendants, is a joint-stock corporation located in New Britain, engaged in carrying on the telephone business. In September, 1896, the plaintiff and said defendant entered into a written agreement under seal, in which the city agreed to permit said defendant "to use all poles belonging to said city," subject to the rights of all parties then using the poles, and the right of the city to use the top arm on each pole; said defendant agreed (1) to permit the city to use "the top arm of all poles owned by said company, or which may be hereafter erected by it;" (2) to furnish and set new poles whenever and wherever the city may wish to extend its lines, free of charge; and (3) "to furnish all city departments all telephones they may order put in, at the agreed price of $13.50 net, each, per year." The contract was to remain in force for twenty years from date.

At the time the foregoing agreement was made, the defendant as principal and certain individuals, who are made defendants, as sureties, made and delivered to said city a penal bond in the sum of $2,500, the condition of which, after reciting that the obligor and the city had entered into the foregoing agreement, which was by reference made a part of the bond, among other things provided as follows: "If the said obligor shall sell its property, or its control shall go into the hands of other parties, or its competition with the Southern New England Telephone Company, its assigns or successors, shall not be kept up, or if the control of said obligor shall pass either directly or indirectly into the hands of said Southern New England Telephone Company, its assigns or successors, then this bond shall be in full force and effect, and in case of the said obligor ceasing its competition with or coming under the control of the Southern New England Telephone Company, its assigns or successors, then, and in that event, said sum of $2,500 shall be considered as liquidated

damages, and the full amount thereof shall be paid to the city; but otherwise to be void and of no effect."

The breach of the bond alleged in the complaint is the fact that the defendant has ceased to compete with the Southern New England Telephone Company, and has come under its control. The defendants in a single answer set up in effect two special defenses, in substance as follows : (1) The provision in the bond relating to competition in the telephone business was inserted " for the sole and exclusive purpose of creating, continuing, and securing " competition for twenty years between the defendant and the Southern New England Telephone Company, in favor of the general public; (2) the city has, since the agreement and bond were made, cut down some of the poles the use of which the defendant, the New Britain Telephone Company, was to have under the agreement.

The plaintiff demurred to the answer and the court overruled the demurrer to the first, and sustained it as to the second, of these defenses.

The plaintiff then, in its reply, in effect denied the first defense, and the case was tried to the court. The issues were found for the plaintiff.

The material facts found are in substance these : At the date of the contract and bond the defendant telephone company and the Southern New England Telephone Company were competitors in the public telephone service in New Britain. The defendant telephone company did not come under the control of, nor cease its competition with, the Southern New England Telephone Company prior to April 1st, 1899, and since said competition ceased there has been no change or diminution of the service, or increase in the price thereof, up to and after the commencement of this action. The plaintiff did not prove nor has it suffered any actual damage because of the breach of the condition of said bond.

From September, 1896, to November 21st, 1899, the defendant telephone company was using continuously, for its business, the poles of the plaintiff, according to the agreement, except such poles as are alleged in the answer to have been cut down.

On the trial the defendants offered evidence to prove that at a hearing before the court of common council of the plaintiff city, prior to the passage of a resolution authorizing its authorities to enter into the agreement and to accept the bond here in question, the counsel of the defendant telephone company urged the passage of said resolution on the ground that it, and the action to be taken under it, would be beneficial to the general public by creating and continuing competition in the telephone service between the defendant telephone company and the Southern New England Telephone Company. The court excluded the evidence. On the trial the defendants made certain claims which the court overruled. The court rendered judgment for the plaintiff for the amount specified in the bond as liquidated damages.

The case is otherwise sufficiently stated in the opinion.

*Henry Stoddard*, for the appellants (defendants).

*Frank L. Hungerford*, for the appellee (plaintiff).

TORRANCE, C. J. The agreement and the bond here in question, for most purposes may fairly be regarded and construed as a single instrument. They were made at the same time, as part of the same transaction, and the one—the agreement—is by express reference made a part of the other, as much so as if it were written out in full therein. The bond thus contains the agreement and something more. In addition to this agreement and the usual conditions of defeasance, the condition of the bond contains, by clear implication, certain engagements not contained in the embodied agreement, which the defendant telephone company agrees to keep, and among them is the one described in the complaint for the breach of which this suit was brought. An enforceable agreement may be contained in that part of a bond called the condition. *Tomlinson* v. *Ousatonic Water Co.*, 44 Conn. 99. By the bond, then, the defendant telephone company, among other things, agreed in substance that it would keep control of its property and business, and keep up its com-

petition with its business rival, during the full contract period of twenty years. The defendant in its answer alleged that the agreement relating to competition was made " for the sole and exclusive purpose of creating, continuing, and securing" competition in the telephone business for the benefit of the general public. This was denied by the plaintiff, and that issue was found in its favor. The defendant then contended, and now contends, that it appears upon the face of the instruments themselves that the sole and exclusive purpose and object of the agreement relating to competition was to secure the continuance of such competition in favor of the general public. This contention cannot be sustained. By the first agreement the city, in exchange for certain rights and privileges granted by it to the defendant telephone company, obtained certain rights and privileges, presumably valuable, for itself as a corporation, and not for the general public; and among these was the right to have telephonic service in all the city departments at an agreed price per year for twenty years. The right of the parties to enter into this particular agreement does not appear to be questioned by any one, and so far as we are aware it cannot be successfully questioned. That agreement on its face thus shows that the city, by virtue of lawful rights acquired under it, was interested for itself, and not for the general public of New Britain or elsewhere, in having the defendant telephone company keep control of its telephone business and remain capable of performing its agreements. To secure, as far as could be done by agreement, such continuous control and capacity on the part of the defendant telephone company for the contract period, the bond was drawn. In it that company agrees in effect (1) not to sell its property, (2) not to transfer to others the control of its business, (3) not to cease to compete with the rival company. Such things, if done, would or might affect the performance of the first agreement, and the defendant agrees not to do them; in effect, these stipulations and the bond furnish, and appear to have been made for the sole purpose of furnishing, additional security for the performance of the first agreement. If the city could for its own benefit enter into

the first or principal agreement, it is difficult to see why it could not also enter into the subsidiary agreement to secure the more effectual performance of the first. We think the parties had the right to make and enter into both of these agreements, and that upon the face of the instruments embodying these agreements there is nothing that appears to be *ultra vires* as to the parties, or against public policy.

The question, whether the present parties, without having entered into the first agreement, could make one like the second, for the sole purpose of securing competition between the rival telephone companies for the benefit of the general public, is not presented upon this record, and upon it we express no opinion.

Our conclusion is that the agreement for the breach of which this suit is brought, is a valid agreement, and that the trial court did not err in so holding.

For the breach of this agreement the trial court awarded as damages the full amount of the bond ; and the next question is whether this was error. The bond in this case is one in the penal sum of $2,500, with a condition. The condition, in the first part of it, provides that the bond shall be in full force and effect if the obligor (1) shall fail to perform its part of the written agreement, or (2) shall sell its property, or (3) shall suffer the control of its affairs to pass into the hands of others, including the Southern New England Telephone Company, or (4) shall cease to compete in the telephone business with the last-named company. For a breach of the bond in respect to any of these things, the amount named in the bond is clearly, in the forepart of the condition, a penalty only. Then follows these words : "And in case of the said obligor ceasing its competition with or coming under the control of the Southern New England Telephone Company, or its assigns or successors, then, and in that event, said sum of $2,500 shall be considered as liquidated damages, and the full amount thereof shall be paid to the city."

The particular breach above specified is the one sued upon, and the question is whether the sum agreed to be paid as dam-

ages for such breach is liquidated damages or a penalty. As a general rule parties are allowed to make such contracts as they please, including contracts to liquidate and fix beforehand the amount to be paid as damages for a breach of such contracts ; but the courts have always exercised a certain power of control over contracts to liquidate damages, so as to keep them in harmony with the fundamental general rule that compensation shall be commensurate with the extent of the injury. Thus, although parties in express and explicit terms provide that the sum agreed to be paid shall be liquidated damages and not a penalty, the courts have held, notwithstanding such an expression of intent, that the sum was a penalty. *Kemble* v. *Farren*, 6 Bing. 141 ; *Lampman* v. *Cochran*, 16 N. Y. 275 ; *Davis* v. *Freeman*, 10 Mich. 188 ; *Richardson* v. *Woehler*, 26 id. 90 ; *Schrimpf* v. *Tennessee Mfg. Co.*, 86 Tenn. 219.

In determining whether a sum agreed to be paid on breach of a contract is a penalty or liquidated damages, the court will look at the entire agreement, its scope, purpose, and subject-matter, and may consider the result of a breach thereof, and the reasonableness of the sum agreed to be paid therefor, under all the circumstances of the case. In the case at bar the city and one of the defendants entered into an agreement by which the city acquired certain rights, the chief of which appears to be the right to telephonic service for the city departments at an agreed price per year for twenty years. It was apparently to secure the performance of this principal agreement that the bond and the engagements therein were made. One of the engagements in the bond was that the defendant telephone company should not come under the control of or cease to compete with one of its rivals in the telephone business in New Britain. The parties must have deemed this engagement of some importance, or it would not have been made ; and apparently they deemed it of great importance, for they agreed beforehand that for a breach of it alone a fixed sum should be paid as liquidated damages, and that the whole sum so agreed upon should be paid ; and they had the right to make such an engagement and to guard against its breach

in this way. Now it is evident that the damages upon a breach of such an engagement, in the absence of any agreement about them, would be very uncertain in amount, and would not be readily susceptible of proof if contested; and we find a rule of interpretation laid down in such cases to the effect that when the nature of the engagement is such that upon a breach of it the amount of damages would be uncertain or difficult of proof, and the parties have beforehand expressly agreed upon the amount of damages and that amount is not greatly disproportinate to the presumable loss, their expressed intent will be carried out. *Bagley* v. *Peddie*, 16 N. Y. 469; *Monmouth Park Asso.* v. *Wallis Iron Works*, 55 N. J. L. 132; *Tennessee Mfg. Co.* v. *James*, 91 Tenn. 154; *Tingley* v. *Cutler*, 7 Conn. 291; *Chase* v. *Allen*, 13 Gray, 42; *Tode* v. *Gross*, 127 N. Y. 480. We think the case presented by the record falls within this rule, and that the trial court did not err in so holding and rendering judgment for liquidated damages.

It remains to notice briefly two remaining questions in the case. The first relates to the ruling upon evidence. The rejected evidence was offered, apparently, to prove that the agreement as to competition was made " for the sole and exclusive purpose " of securing competition for the general public. It did not in any proper sense tend to prove that fact and was rightly rejected. The second relates to the defense set up in paragraph six of the answer. That alleged in substance that the plaintiff had broken the agreement with the defendant telephone company, in part, by cutting down some poles to the use of which that company was entitled under the agreement. This was set up as a defense to the action. For the reasons set forth in the demurrer* to this defense, we

---

* The plaintiff demurs to paragraph 6, and for reasons of demurrer assigns the following: 1. It does not appear from any allegations in said paragraph that more than two poles were cut down, destroyed, or removed by the plaintiff, or that any of the poles so removed were in use by the defendant corporation, or that there was any intention on the part of said corporation to use said poles. 2. It does not appear from any of the allegations of said paragraph that the business of the defendant corporation was in any wise interfered with, impaired, or impeded by the cutting, removing, and destruction of the poles alleged to have

think the court did not err in sustaining said demurrer, nor in holding that it furnished no defense to the action.

There is no error.

In this opinion the other judges concurred, except CASE, J., who dissented.

CASE, J. (dissenting). If it was the main purpose of the city to stimulate a business rivalry between the defendant and the Southern New England Telephone Company, then, certainly in the absence of any finding that the city had a legitimate interest in the event, or of facts from which that conclusion fairly follows, the undertaking falls outside its corporate powers. The city had power to stipulate for the continuance of the defendant's business by the defendant, if the city's interests under the antecedent contract were fairly involved in such action, but, without some real or apparent ground therefor arising out of its contract relations and based upon self-protection, it had no right to discriminate against a single company while leaving the defendant open to convey to or combine with any other. To hold broadly and without limitation that it might so do under the usual charter powers of a municipal corporation, or even to hold that the mere contracting for the use of the poles carried with it as a necessary incident such extraordinary power as that referred to, is to remove restrictions upon municipal action at a point

been cut down, destroyed, and removed by the plaintiff. 3. It does not appear from any allegation in said paragraph that the breaches referred to in the complaint were in any wise caused or attributable to the acts of the plaintiff alleged in said paragraph. 4. It does not appear from any allegations of said paragraph, or from Exhibits "A" and "B," therein referred to, that there was any duty on the part of said city to keep and maintain the poles alleged in said paragraph to have been cut, destroyed, and removed by the plaintiff. 5. It does not appear from any of the allegations of said paragraph that any damage was caused to the defendant corporation by the cutting, destroying, and removal of the poles referred to therein, or that such cutting, destroying, or removal in any wise affected the business of said defendant corporation, or that said poles were necessary for the conduct and continuance of the business of the defendant corporation.

where it seems most essential to retain them. It is the policy of the law to hold municipal bodies to the exercise of their proper functions ; not to discover for them new lines of activity foreign to the scope or purpose of their corporate existence.

But it is the duty of the court to sustain the agreement if any reasonable construction which its terms admit justifies that conclusion. Such a construction is possible here, and voices what we must suppose to have been the true intent of the parties. While the Southern New England Telephone Company is specifically named, it is clear from the whole transaction that the city's design was not solely to keep the defendant from the control of that corporation, but chiefly that the defendant should maintain an independent integrity as an active business concern,—either under its then existing management or under such other control as would insure the preservation of the city's rights under its contract. The condition against absorption by this particular corporation was only a detail of this general design, and not its main purpose. Probably the precise danger so sought to be guarded against was the only danger in sight when the agreement was entered into by the parties. In this view of the undertaking, and, it seems to me, in this view only, the provision for maintaining " competition " is without offensive significance. It becomes merely an alternative way of expressing the real spirit of the obligation, which was to preserve in the defendant, or in its legal successors, an effective instrument for the carrying out of the contract.

Under whatever name it is urged, therefore, the only basis for a recovery here is the defendant's surrender of its control to another corporation. The fact that its successor happens to be the Southern New England Telephone Company is without necessary significance in considering the question of damage. The condition of the obligation provides both generally and specially for the contingency which has arisen. It recites that " if the said obligor shall sell its property, or its control shall go into the hands of other parties," the bond shall be of full force. Obviously the damages recoverable for such a breach

alone, that is, unless it includes as an element this matter of "competition," are to be measured strictly by the damage shown to have been suffered because of it. The resolution of the common council directing the exaction of a bond and dictating its terms and amount makes this clear. It provides as one of the conditions of the bond, "in case this company sells out, or its control goes into other party's hands, that its competition must be kept up with the Southern New England Telephone Company, and in case its control passes into their hands the bond shall be forfeited." It is only when the control passes to this one named possible successor that an attempt is made to assess the damages in advance. The range of possible change of control is unlimited, save by this one restriction. The field is open to all the world, save to this one company, and, except in this single contingency, the plaintiff recognizes the possibility of determining the actual damage that may follow such a change of control, and is satisfied with a recovery commensurate to the damage suffered, to be estimated upon actual proof of loss.

If the provision for "competition" is stripped of its literal import, therefore, the agreement cannot be sustained as one calling for liquidated damages, without full recognition of its arbitrary and inequitable character, and nothing upon the record discloses sufficient ground for the discrimination which it attempts. We are not to assume that peculiar or unusual elements of damage to the city would attend the transfer of the defendant company to the Southern New England Telephone Company, which would not attend a transfer to any other concern, or that greater difficulty would attend the assessment of damages in one event than in the other. The finding warrants no such conclusion. Such facts found as bear at all upon this feature of the case plainly exclude it.

This essential unfairness of the stipulation in question is therefore apparent at the outset. The unfairness is of course emphasized by the fact that the changed condition of affairs which brings about the forfeiture is one merely in name, so far as the city is concerned, and that neither inconvenience nor damage has resulted from it. Presuma-

bly the security which the bond affords was exacted as a legitimate protection against loss or damage. It does not follow that such loss or damage was expected, even though the event that might give rise to it was foreseen. The results which have followed the broken condition are those which might have been expected to follow. If the parties had in contemplation only such elements of damage as the bond can reach, it is hardly conceivable that a different result was looked for. If, on the other hand, they had in mind, as an element of recoverable damage, the effect upon the New Britain public generally of an abandonment of " competition " by the defendant company, they were obviously reckoning with something that the city's undertaking does not and cannot include. In either event the circumstances show that there was no attempt to determine in advance a fairly compensatory sum, and that the sum in fact named bore no intelligent relation to any reasonable expectation of damage.

In this situation the duty of the court is plain. It cannot lend its aid to give the plaintiff the inequitable advantage that must follow a literal enforcement of the stipulation. It is well settled that the language of the parties in such an instrument is of no determining force where it conflicts with the true character of the undertaking embodying it. No expressed agreement to fix, or stipulate, or liquidate, damages in advance, will avail as such against the real nature of the obligation. It is suggested in 2 Sedg. on Dam. (7th ed.) p. 254, as " the fundamental principle governing the whole subject," that courts " will only follow the expressed intention of the parties to liquidate the damages, when this intention is not calculated to work injustice, or to substitute for the compensation, which the law regards as proper, an arbitrary and oppressive pecuniary fine." It is not conclusive that the parties say the damages are liquidated ; it must appear that this is the fact, and the actual liquidation of damages means more than the mere naming of an arbitrary sum,—the sum named must bear some rational relation to the contingency provided against. This

rule has found general support in the courts of this country. One of the latest cases which fully approves it after a careful review of the authorities is that of *Chicago House-Wrecking Co.* v. *United States*, 45 Cir. Ct. App. 343. It is clearly entitled to favor here, where it is but the extension of an equitable principle that finds expression in our statute limiting the recovery on a penal bond to such damages "as are equitably due." General Statutes, § 1115. As is said in the case just cited: "If the parties could at will change what is essentially a penalty, and properly intended to enforce the obligations of the contract, into stipulated damages, it could be done in any case, although the damages might be either nominal or easily assessable."

For the reasons given I think the rule is of application to this case, and that upon the facts found it was error for the trial court not to so hold and render judgment for only nominal damages.