[Civ. No. 16728.   Second Dist., Div. Two.   Apr. 19, 1949.]

JOHN L. BLACK et al., Appellants, v. BESSIE FAE BLACK, Respondent.

[Civ. No. 16729.   Second Dist., Div. Two.   Apr. 19, 1949.]

R. ARCHIE BLACK, Appellant, v. POLLYANNA PHIL-LIPS, as Administratrix With the Will Annexed, etc., Respondent.

[Civ. No. 16730.   Second Dist., Div. Two.   Apr. 19, 1949.]

DORIS BLACK, Appellant, v. POLLYANNA PHILLIPS, as Administratrix With the Will Annexed, etc., Respondent.

[Civ. No. 16731.   Second Dist., Div. Two.   Apr. 19, 1949.]

RALEIGH BLACK, Appellant, v. POLLYANNA PHIL-LIPS, as Administratrix With the Will Annexed, etc., Respondent.

[Civ. No. 16732.   Second Dist., Div. Two.   Apr. 19, 1949.]

JOHN L. BLACK, Appellant, v. POLLYANNA PHILLIPS, as Administratrix With the Will Annexed, etc., Respondent.

Loughman & Loughman, Zeutzius & Steffes and A. P. G. Steffes for Appellants.

Haywood Ardis, Harry J. McClean and Henry F. Walker for Respondents.

MOORE, P. J.—A. R. Black departed this life November 8, 1945. For many years he had owned and operated a 30-acre orange grove near Lindsay in Tulare County. On January 14, 1942, decedent without consideration executed and delivered a quitclaim deed to one Webb conveying to the grantee the entire grove. As part of the same transaction Webb delivered three deeds in joint tenancy reconveying the property in equal parts (a) to decedent and his son Raleigh and the latter's wife, Doris; (b) to decedent and his son John and (c) to decedent and his son Archie. No consideration was paid for any of the latter deeds. John did not hear of the dual transaction until 30 days thereafter. Archie had no knowledge thereof until after the death of his father.

After the father's decease each of the sons filed a claim with decedent's administratrix for his share of the profits earned by the grove from the date of the deeds to the date of the father's demise, Raleigh being joined by his wife, Doris. Thereafter, they instituted the instant actions against the administratrix based upon their rejected claims, and against Bessie Fae Black, the widow, for moneys she had received from her husband. Basing their actions upon their status as joint tenants with their father they alleged against the administratrix that decedent in his lifetime had received and

retained specified sums for the use of each claimant. In the action against the widow they alleged she had received moneys for their use and had rejected demands therefor. Judgments were entered for the defendant in each action, based upon the conclusions derived from the stipulated facts. Whence, this appeal.

Two assignments of error are covered in the briefs: (1) the facts do not support the judgments, (2) error in limiting the applicability of Raleigh Black's testimony to the action against the widow.

### The Evidence Is Sufficient

To warrant recovery against either defendant it was indispensable that appellants establish that as a matter of law a portion of the revenues from the grove after the Webb deeds were recorded belonged to appellants. A screening of the facts as agreed upon for a single trial of all five actions compels an affirmance upon that ground.

After the Webb deeds no change occurred in the manner or method of operating the grove. After as well as before the deeds all crops were sold through an association of fruit growers which paid the proceeds to decedent by checks signed by Raleigh who was its secretary. The operating expenses and taxes were paid by decedent. Raleigh and his wife continued to live on the grove, cultivated and irrigated it, for which he received $100 a month from decedent and the use of a house and some equipment which he used also on property owned by himself. No demand was ever made upon decedent for possession of the grove or for an equal right with the father to its occupancy or for an accounting as to profits. No segregation of income or expenses was made at any time prior to decedent's demise in 1945. It is a fair inference that Webb acted merely as agent for the father; the sons paid nothing for the deeds which were made to effect a transfer of 10 acres to each of them upon the decease of Mr. A. R. Black without probate and free from inheritance taxes and all claims of his prospective wife or of his estate. At the time he was contemplating a matrimonial alliance with respondent Bessie Fae. At no time after recording the deeds did decedent release possession of the grove but he directed the care thereof, collected the revenues derived from the sale of its crops and paid income tax upon same. Neither son requested payment to himself of any portion of the revenues or asked to share the occupancy of the land described in the deed which had

named him a joint tenant. Bills for expense of operating the entire grove were received by Raleigh and forwarded to decedent or were paid and reimbursement gained from his father. Prior to the deeds decedent had maintained a revolving fund with the citrus association. It was continued in his name. Into it were paid the proceeds from the sales of fruit. Checks of the association were drawn by Raleigh Black, its secretary, payable to such account. Raleigh owned 10 acres near the 30-acre grove of his father and used water from a well on one of its 10-acre tracts. He paid one-third of the cost of repairs of the pump while his father and one Wolfe (owner of an adjacent 10 acres) paid the remainder. At all times after the deeds from Webb, Mr. A. R. Black paid all costs of pruning done and of fertilizer used on the grove and paid the taxes assessed against the 30 acres.

When the deeds were delivered by Webb appellants Raleigh and Doris understood that all revenues derived from the 30 acres would be paid to decedent. None of the brothers ever demanded a share of the proceeds from the sales of the fruit crops. None ever made a gift tax return or paid a tax on income from the grove, or paid any portion of the cost of insurance on the buildings on the 30 acres, or agreed to pay any part of the losses. Never did any of them ask the father for an accounting. In view of such uncontroverted facts the contention of appellants is resolved into a claim that the trial court's conclusions do not logically follow. But because appellants were joint tenants they were not automatically entitled to share equally with their father in the fruits of the property.

■ A joint tenant out of possession may not maintain an action against his cotenant in possession for the rents, issues and profits derived from the property by means of the occupant's own labor. (*Pico* v. *Columbet*, 12 Cal. 414, 421 [73 Am.Dec. 550] ; *Howard* v. *Throckmorton*, 59 Cal. 79, 89; *Plass* v. *Plass*, 122 Cal. 3, 11 [54 P. 372] ; *McWhorter* v. *McWhorter*, 99 Cal.App. 293, 296 [278 P. 454] ; *Schell* v. *Schell*, 74 Cal.App.2d 785, 789 [169 P.2d 654].) The only exception to the rule as established by the cited authorities is that under circumstances showing an agreement by the tenant in possession to act as bailiff or receiver of the share of rents and profits belonging to the tenant out of possession, the latter will be entitled to an accounting and payment of his share.

In the instant case it was stipulated that no such agreement was ever made. Decedent, though not in residence upon the

premises, was in possession and conducted the operation of the grove both before and after the making of the deeds. While Raleigh Black resided upon the premises after Webb's deeds he was acting as the employee or agent for his father in the operation of the grove as he had been prior to the conveyances. Therefore, the income derived from the operation of the properties by decedent was his own property and subject to his sole disposition during his lifetime. It necessarily follows that decedent's widow owes no duty to account to appellants for moneys rightfully belonging to her late husband in his lifetime. He was at liberty to bequeath them or to make gifts of them *causa mortis*. Her withdrawals and deposits on his accounts were in accordance with a power of attorney executed in her favor by decedent in the presence of witnesses 11 months prior to his death and further substantiated by decedent's visits to the bank thereafter. Her conduct of her husband's affairs cannot be tortured into an involuntary trustee relationship by appellants' assertion that she "converted" her husband's money. As the trial court stated, her stewardship may not thus be questioned.

Since decedent during his lifetime was not obligated to account to appellants, it follows necessarily that his estate is not now obligated to account. The arguments and contentions of appellants in their actions against the administratrix were identical with those advanced in the action against decedent's widow and for that reason were appropriately consolidated therewith. The same reasons compelling the affirmance of one judgment will cause the affirmance of the others.

Appellants argue the usual effect of a joint tenancy deed and cite authorities for the proposition that the proceeds of property owned in joint tenancy retain the character of the property from which they were acquired. (*Fish* v. *Security-First National Bank*, 31 Cal.2d 378, 387 [189 P.2d 10]; *In re Kessler*, 217 Cal. 32, 35 [17 P.2d 117]; 48 C.J.S. 932; 33 C.J. 910.) The instant actions are governed by an exception to the general rule by reason of the fact that appellants neither occupied the lands nor had any agreement with their father that they should share in the profits earned by the 30 acres. They attempt to fortify their positions by quoting the phrase of the deeds which conveyed the "rents, issues and profits," which language they assert proves decedent's specific intent that they should enjoy the revenues from the lands. The last quoted phrase was surplusage and created no rights

in appellants in addition to those implied by the grant. (*Estate of Davis,* 88 Cal.App.2d 704, 706 [199 P.2d 755]; *Hart* v. *Nagasawa,* 218 Cal. 685, 688 [24 P.2d 815].)

Moreover, appellants were by the Webb deeds made joint tenants with their father. He never agreed that they should have an extraordinary right to the profits from the lands. Therefore, their rights are governed by long established principles applicable to joint ownership. ▮ A joint tenant in the sole and exclusive occupancy of the land is not required to account to his cotenant for any portion of the revenues derived therefrom so long as they are the fruitage of his own capital, labor and skill. (48 C.J.S. § 9, p. 932.) The risks incurred by the occupier of land (owned in joint tenancy) in the cultivation of crops are his as are also the profits he may enjoy or the losses he may sustain in producing crops by his industry. In taking all the fruit grown upon the land decedent herein received no more than his just share inasmuch as it is no more than the reward for his own labor and capital to no part of which is his cotenant entitled. (*Pico* v. *Columbet,* 12 Cal. 414, 421 [73 Am.Dec. 550].)* It is thus seen that there is no equity in the claim that the mere fact of being named as joint tenant entitles one to share in the revenues produced on the land as the result of the labor, management and money of him who is in sole possession when the claiming cotenant has neither demanded possession, contributed to the expense of production nor previously made himself liable for possible losses. (*Sargent* v. *Parsons,* 12 Mass. 149; *Bird* v. *Bird,* 15 Fla. 424 [21 Am.Rep. 296]; 27 A.L.R. 184, 39 A.L.R. 408.)

▮ It is clear, therefore, that the application of the foregoing principle does not infringe upon the parol evidence rule. While the joint tenancy deed entitles the tenants to equal enjoyment, all things being equal, they are rendered unequal when one occupies the land, cultivates, fertilizes and irrigates it, and harvests and markets the resulting crops while his cotenant may be leading the life of the prodigal son in faraway places. ▮ Since the inferences to be drawn from stipulated facts are the function of the trial court its decision will not be upset on appeal in the absence of a gross abuse of discretion. On the contrary, if some parts of stipulated facts support while others would defeat the judgment,

---

*The rule is not applicable to the exploitation of lands or leaseholds for minerals. (*Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637, 656 [52 P.2d 237].)

those which support it are to be accepted on appeal with the same effect as if they stood alone. (*Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 184 [168 P.2d 946]; *Bechtold* v. *Bishop & Co., Inc.,* 16 Cal.2d 285, 291 [105 P.2d 984].)

### RALEIGH BLACK'S DEPOSITION

█ Appellants' final contention is that the trial court erred in ruling that portions of the deposition of Raleigh Black taken in the action against the widow were to be limited in application to that action and excluded from consideration in the actions against the administratrix. They assert that the deposition was offered in evidence in the four cases against the administratrix as well as in the action against the widow and that therefore the inhibition of section 1880 of the Code of Civil Procedure making a claimant against an estate incompetent as a witness was waived, thus permitting further testimony by the claimant. Such is contrary to the fact. The stipulation was that it might be read subject to respondents' objections. Prior to the reading of the deposition in the consolidated cases, respondents' counsel informed the court that he was limiting his reading to the action against the widow. Pursuant to respondents' motion the court limited the application of the testimony against the widow only. This was not error. The evidence was not admissible under section 1880 and neither the stipulated facts nor any other agreement entitled appellants to a different ruling.

Not only was Raleigh's deposition not taken in an action against the administratrix, but it was not initially introduced against her. Therefore, the prohibition of the section 1880 was not waived, nor was the "door opened" for the admission of further testimony by the claimant. *Moul* v. *McVey,* 49 Cal.App.2d 101 [121 P.2d 83], cited by appellant is not in point because the rule there enunciated is applicable only after the barrier of section 1880 has been removed. While the parties had agreed to the use of the stipulated facts in all five cases, no concerted plan for the introduction of Raleigh's deposition against the estate had been made. It was therefore not admissible over respondents' objection. █ Also, it must be presumed that the trial court's ruling and its subsequent consideration of the evidence was not prejudicial unless the contrary affirmatively appears from the record. (*Carpenter* v. *Pacific Mutual Life Ins. Co.,* 10 Cal.2d 307, 326 [74 P.2d 761].) Error alone is not sufficient to warrant a reversal. Injury will not be presumed therefrom but must

be affirmatively shown. (*Semple* v. *Andrews*, 27 Cal.App.2d 228, 235 [81 P.2d 203].) Had Raleigh's deposition been received, it would have been cumulative of the evidence contained in the stipulated facts as well as of the witness Webb. Therefore, even if it had been erroneously excluded no prejudice resulted. (*Tillis* v. *Western Fruit Growers, Inc.*, 44 Cal.App.2d 826, 829 [113 P.2d 267]; *Siebel* v. *Shapiro*, 58 Cal.App.2d 509, 515 [137 P.2d 56]; *Fuller* v. *Vista Del Arroyo Hotel*, 42 Cal.App.2d 400, 405 [108 P.2d 920].) If the testimony of Raleigh was ineffective to turn the tide for appellants in the action against the widow in which it was received, surely it could have availed no advantage to appellants in the suit against the administratrix decided by the same judge. (*Nulty* v. *Price*, 202 Cal. 279, 283 [260 P. 291].)

The judgments are affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied May 6, 1949, and appellants' petition for a hearing by the Supreme Court was denied June 16, 1949.