[L. A. No. 22373.   In Bank.   Feb. 6, 1953.]

BETTER FOOD MARKETS, INC. (a Corporation), Appellant, v. AMERICAN DISTRICT TELEGRAPH COMPANY (a Corporation), Respondent.

180

Eugene S. Ives and John Goddard for Appellant.

Lawler, Felix & Hall, Reed A. Stout and John M. Hall for Respondent.

SHENK, J.—This is an action brought on counts alleged in tort and in contract wherein the plaintiff seeks to recover damages resulting from the alleged failure of the defendants to properly transmit burglar alarm signals to their own guards and to the headquarters of the municipal police department. Such failure is alleged to have permitted a burglar to escape with the sum of $35,930 taken from the plaintiff's food market.

On the first trial the court granted a motion for nonsuit in behalf of all the defendants except the American District Telegraph Company, and ordered judgment for those defendants. As against the defendant American District Telegraph Company the jury on the first trial found for the plaintiff, but a new trial was granted on the ground of insufficiency of the evidence. On the second trial the jury was unable to agree and was dismissed. Thereafter the defendant successfully moved for a directed verdict pursuant to section 630 of the Code of Civil Procedure (ordering judgment where motion for directed verdict should have been, but was not, granted), and the court ordered judgment for the defendant. On this appeal taken from that judgment the plaintiff contends that there is sufficient evidence of the defendant's negligence and breach of contract to sustain a verdict for the plaintiff, and that it was error to grant the motion for a directed verdict.

In June of 1947 the parties entered into a written agreement whereby the defendant was to install and maintain its standard "Central Station Burglar Alarm and Holdup System" in the plaintiff's food market. The contract provided that the defendant "on receipt of a burglar alarm signal from the Subscriber's [plaintiff's] premises, agrees to send to said premises, its representatives to act as agent of and in the interest of the Subscriber. . . . The Subscriber hereby authorizes and directs the Contractor [defendant] to cause the arrest of any person or persons unauthorized to enter his premises and to hold him or them until released by the Subscriber. . . . The Contractor, on receipt of a holdup alarm signal from the Subscriber's premises, agrees to transmit the alarm promptly to headquarters of the public police department."

Viewing the evidence in the light most favorable to the plaintiff on this appeal from a judgment on a directed verdict for the defendant, (*Anthony* v. *Hobbie*, 25 Cal.2d 814 [155 P.2d 826]) the following facts were established: On November 16, 1947, at approximately 7:30 p.m. the assistant manager of the plaintiff's market set the burglar alarm system

and locked the building. As he entered his car in the parking lot he was accosted by an armed robber and at gunpoint forced to return and open the store, the inner office and the safe. The robber took the contents of the safe, taped the assistant manager, and left. Approximately 14 minutes elapsed between the time when the store was reopened and when the robber left the store with the loot. During this period signals were being received at the defendant's central station indicating the sequence of the opening and closing of the doors. The defendant's operators at the central station did not call a guard or inform the police until 7:51, nine minutes after the signal indicating that the safe had been opened, was received. The assistant manager had succeeded in knocking a telephone off the hook and calling for help at approximately 7:50. The police arrived at the market at 7:52, within one minute after receiving a call. The defendant's guards arrived shortly thereafter. The assistant manager's watch was broken at the time he was taped and the hands had stopped at 7:50.

Under the circumstances of this case it would have been reasonable to conclude that the defendant had a duty to call the police as well as its own guards to the plaintiff's premises. Promptness being the essence of the defendant's obligation, its delay in acting could reasonably be found to be an omisison to render the agreed service and a failure of performance of the contract.

There is evidence upon which it could have been found that the loss was the proximate result of the defendant's delay in responding to the alarms. There was but one individual committing the burglary. He acted deliberately and there is reason to believe that the agreement between the parties was entered into with the intention of providing for the apprehension of such a person before he left the premises. The time and distance factors indicate that this particular burglar may have been caught had the police and guards been called to the premises a few minutes earlier, and that the delay of nine minutes after the safe had been opened permitted the escape. Such probabilities are to be weighed in the light of common experience in such matters and present a triable issue of fact. There was substantial evidence from which a jury could have found that the plaintiff's loss was the proximate result of the defendant's breach of its contract. Therefore it was error for the trial court to order judgment for the defendant on its motion for a directed verdict.

There remains the question of the validity of the following provisions of the contract for liquidated damages: ''It is agreed by and between the parties that the Contractor is not an insurer, that the payments hereinbefore named are based solely on the value of the service in the maintenance of the system described, that it is impracticable and extremely difficult to fix the actual damages, if any, which may proximately result from a failure to perform such services and in case of failure to perform such services and a resulting loss its liability hereunder shall be limited to and fixed at the sum of fifty dollars as liquidated damages, and not as a penalty, and this liability shall be exclusive.''

█ It is generally recognized that a valid agreement may be made for the payment of liquidated damages, whereas an agreement for the payment of a penalty is invalid. █ Under the law generally the parties are allowed to contract for liquidated damages if it is necessary to do so in order that they may know with reasonable certainty the extent of liability for a breach of the agreement. █ Where the parties exercise their business judgment in providing that it is impracticable and extremely difficult to fix the damages which may result from the defendant's failure to render its service such a provision is not controlling as to the actual difficulty in fixing damages, although it is entitled to some weight. (See *Stark* v. *Shemada*, 187 Cal. 785, 788 [204 P. 214] ; *Dyer Bros. Golden West Iron Works* v. *Central Iron Works*, 182 Cal. 588, 592 [189 P. 445] ; see, also, Restatement of Contracts, § 339(f), p. 544.)

The statutory law and its interpretation in this state are in accord with the general law. Civil Code section 1670 states that a provision in a contract which provides for the amount of damages to be paid in the event of a breach of the contract is void, except as expressly provided in section 1671 as follows : ''The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.'' █ Unless a clause providing for liquidated damages falls within the provisions of section 1671 it is invalid (*Dyer Bros. Golden West Iron Works* v. *Central Iron Works, supra*, 182 Cal. 588, 593; *Long Beach City School Dist.* v. *Dodge*, 135 Cal. 401, 405 [67 P. 499] ) ; and except on admitted facts this is generally a question to be resolved by the trier of fact (*Rice* v. *Schmid*, 18 Cal.2d 382, 385 [115 P.2d

498, 138 A.L.R. 589] ; *Petrovich* v. *City of Arcadia,* 36 Cal.2d 78, 86 [222 P.2d 231] ; *Dyer Bros. Golden West Iron Works* v. *Central Iron Works, supra,* 182 Cal. 588, 593). ■ It is settled law that the burden is on the party seeking to rely upon a liquidated damage provision in a contract to plead and prove facts showing impracticability (*Rice* v. *Schmid, supra,* 18 Cal.2d 382, 385; *Dyer Bros. Golden West Iron Works* v. *Central Iron Works, supra,* 182 Cal. 588, 593).

The plaintiff argues that there is no difficulty in the present case in fixing the actual damage and that the amount of money stolen should be the actual damage. Its contention is that the time for the determination of the question of the impracticability and difficulty in fixing the damages is after the loss has occurred. This is not the rule. ■ In determining this question the court should place itself in the position of the parties at the time the contract was made and should consider the nature of the breaches that might occur and any consequences that were reasonably foreseeable. In *Hanlon Drydock Etc. Co.* v. *McNear, Inc.,* 70 Cal.App. 204 [232 P. 1002] (relying on *Pacific Factor Co.* v. *Adler,* 90 Cal. 110, 120 [27 P. 36, 25 Am.St.Rep. 102]) the court, in dealing with the question presented by the plaintiff's contention, stated at page 211: "If adopted it would practically destroy the power given contracting parties under section 1671 of the Civil Code in any case to make a binding agreement as to stipulated damages. . . . Appellant's theory is manifestly contrary to authorities of other jurisdictions, notably the federal jurisdiction; it finds no support in the text-books so far as our attention has been called and if inference may be indulged in, we think the cases of the local jurisdiction clearly indicate that there is no intention to depart from the universal rule established elsewhere." The court cited numerous authorities supporting the general proposition quoted from *New Britain* v. *New Britain Tel. Co.,* 74 Conn. 326 [50 A. 881, 884, 1015] : "It is the look forward and not backward. that we are called upon to take." This rule is too well settled to admit of further discussion.

In the present case there was no finding with respect to the impracticability or extreme difficulty in fixing damages. ■ Where a trial court does find that such a situation did exist but it appears to a reviewing court that from the nature of the possible detriment the damages could have been fixed without difficulty, a judgment based on the finding will be reversed (*Stark* v. *Shemada, supra,* 187 Cal. 785). ■ The

question becomes one of law where the facts are not in dispute and admit of but a single conclusion. Such is the present case. ■ When the uncertainties as to what might have happened if the plaintiff's store were entered is viewed from the position of the contracting parties, it satisfactorily appears that there is no basis whatever for a conclusion that it would have been practicable or reasonably possible for the parties to fix the probable damage. The question, upon the admitted facts, is clearly one of law.

The possibilities of the consequences of a failure of the defendant to perform its obligation under the contract are innumerable. A failure to receive the signals, or to respond to them, or to report them to the plaintiff would be a violation of the agreement. Entrances to the building after working hours might be made by persons having authority as well as by burglars or by persons bent upon mischief. They might or might not cause damage. There might be the theft of a ham, or of a truckload of goods, or the contents of a safe. There might be a breaking in for the purpose of theft and no theft. If money was taken it might be a few dollars or many thousands. Books might be tampered with, or papers abstracted. Damage might be caused in many ways that were not foreseeable. In short, it was extremely difficult to predict the nature and extent of the loss. Furthermore, there was no way of ascertaining what portion of any loss sustained could be attributed to the defendant's failure to perform. The contract specifically provided that the defendant was not an insurer. Therefore, if it should have fully performed on the contract and a loss resulted nevertheless it could in no way be liable. The parties recognize, then, that losses might have resulted which were not causally connected with the defendant's failure of performance. Where there had been a failure of performance and a loss, what part of that loss could be attributed to the failure of performance; or how much of that loss would have resulted had there not been a failure of performance? Under the complexity of the circumstances in this case the parties could not answer this question. There being no reasonable basis upon which to predict the nature and extent of any loss, or how much of that loss the defendant's failure of performance might account for, it is certain that it would have been "impracticable or extremely difficult to fix the actual damage" (Civ. Code, § 1671).

■ The validity of a clause for liquidated damages requires that the parties to the contract "agree therein upon an

amount which shall be presumed to be the amount of damages sustained by a breach thereof . . ." (Civ. Code, § 1671.) This amount must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained. (*Dyer Bros. Golden West Iron Works* v. *Central Iron Works, supra,* 182 Cal. 588; *Rice* v. *Schmid, supra,* 18 Cal.2d 382, 386; Restatement, Contracts, § 339, p. 554.) It has been suggested that the greater the difficulty encountered by the parties in estimating the damages which might arise from a breach, the greater should be the range of estimates which the courts should uphold as reasonable. (5 Corbin on Contracts, § 1059, p. 291.) The plaintiff's contention that the agreed amount did not represent an endeavor by the parties to estimate the probable damage is based on evidence that the liquidation clause was part of the printed material in a form contract generally used by the defendant in dealing with subscribers such as the plaintiff, and that the defendant did not investigate the plaintiff's manner of conducting its business or the character and value of its stock. Nevertheless the parties agreed to the liquidation provisions, and there is no evidence that they were not fully aware of circumstances making it desirable that liquidated damages be provided for.

In the present case the impracticability or extreme difficulty in fixing actual damages appeared as a matter of law. In the exercise of their business judgment the parties reasonably agreed that in all cases of breach by the defendant the damages would be fixed at $50 whether in fact the defendant's loss for a given breach was greater or less than that amount. As previously stated the stipulation that the amount was to be paid "as liquidated damages and not as a penalty" while entitled to some weight is not conclusive. ■ Nevertheless, it is clear that the actual loss resulting from a breach could in many cases be less than the amount provided for. It is equally clear that in many other cases the actual loss would exceed that amount. To construe this as a penalty it would have to be said that the amount provided to be paid bore no reasonable relation to the losses the parties thought might be sustained. This may not rightly be stated.

The plaintiff seeks to avoid the effect of the liquidation clause on the ground that it has no application to a tort action. However, the plaintiff makes no claim that a duty was owed to it outside of that created by the contract, and no breach of

duty was alleged other than a failure to render the contracted for service. ▮ Although an action in tort may sometimes be brought for the negligent breach of a contractual duty (*Jones* v. *Kelly*, 208 Cal. 251 [280 P. 942]), still the nature of the duty owed and the consequences of its breach must be determined by reference to the contract which created that duty. In the present case the duty created by the contract was one for which liability for a breach thereunder was fixed, and whether the action is brought in tort or in contract the nature of the duty remains the same. ▮ The plaintiff cites no authority and none has been discovered to the effect that where the breach of a duty created only by contract is a negligent one the application of a valid clause for liquidated damages may be avoided by bringing an action in tort.

The plaintiff relies upon a number of cases holding that agreements purporting to be for liquidated damages were in fact agreements for penalties. (*Pacific Factor Co.* v. *Adler, supra,* 90 Cal. 110; *Stark* v. *Shemada, supra,* 187 Cal. 785; *Rice* v. *Schmid, supra,* 18 Cal.2d 382; *Robert Marsh & Co., Inc.,* v. *Tremper,* 210 Cal. 572 [292 P. 950]; *Eva* v. *McMahon,* 77 Cal. 467 [19 P. 872]; *Sherman* v. *Gray,* 11 Cal.App. 348 [104 P. 1004].) ▮ The validity of a liquidation clause in a contract must be determined in accordance with the facts and circumstances of each particular case. The factual situations in the cases relied upon make them inapplicable to the present case. As a group they are distinguishable upon the ground that in each there were factors which would permit the parties to fairly estimate actual damages in the event of a breach— as a predetermined amount for every item of merchandise an obligor failed to deliver. There was no inherent uncertainty as to the amount of loss that could be sustained, as in the present case. The function of the agreed sum in each of those cases was to insure performance by the obligor and was properly held to be a penalty.

The order directing a verdict for the defendants involved questions of fact which could have been found in the plaintiff's favor. However, the error warrants only a qualified reversal of the judgment, as the plaintiff's recovery is limited to $50 if he should prevail on a retrial.

The judgment of the trial court is modified to provide as follows: "It is ordered, adjudged and decreed that plaintiff recover from the defendant, American District Telegraph Company, the sum of $50.00 without costs." As so modified

the judgment is affirmed. Each party shall bear its own costs on appeal.

Gibson, C. J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

This court holds the following provision a valid contract for liquidated damages: "It is agreed by and between the parties that the Contractor [defendant] is not an insurer, that the payments hereinbefore named are *based solely on the value of the service in maintenance of the system described, that it is impracticable and extremely difficult to fix the actual damages, if any, which may proximately result from a failure to perform such services and in case of failure to perform such services and a resulting loss its liability hereunder shall be limited to and fixed at the sum of fifty dollars as liquidated damages,* and not as a penalty, and this liability shall be exclusive." (Emphasis added.)

It is conceded that defendant failed to perform its duty; that plaintiff's loss resulted therefrom; that plaintiff's loss was the sum of $35,930 which was taken, by a burglar, from plaintiff's food market.

In order to uphold the so-called $50 liquidated damage provision, it was necessary for the majority to find that damages were "impracticable or extremely difficult" to fix at the time the contract was entered into, and further that the $50 provision bore a reasonable relation to any loss which the parties contemplated might be sustained as a result of a breach of the contract.

It is said in the majority opinion that "In determining this question [the losses which might be expected to occur] the court should place itself in the position of the parties at the time the contract was made and should consider the nature of the breaches that might occur and any consequences that were reasonably foreseeable." Placing myself in the position of the parties at the time the contract was entered into, I would say that one way of ascertaining the loss which might occur, was to take an average of the amount of cash left in the safe in the store overnight; an inventory of the average merchandise kept in the store. If the losses sustained did not approximate the damages provided for by the parties, the rule set forth in *Kothe* v. *R. C. Taylor Trust,* 280 U.S. 224

[50 S.Ct. 142, 74 L.Ed. 382], would be applicable. There the parties provided for excessive liquidated damages, and the Supreme Court held that the damages provided for in the contract bore no reasonable relation to the probable loss to be sustained and held the provision a penalty and therefore unenforceable. It is the rule that the validity of the provision must be proved by the one seeking to enforce it. And as is said in the majority opinion "Where a trial court does find that such a situation did exist [impracticability or extreme difficulty in fixing damages] but it appears to a reviewing court that from the nature of the possible detriment the damages could have been fixed without difficulty, a judgment based on the finding will be reversed (*Stark* v. *Shemada, supra*, 187 Cal. 785)."

It is also said in the majority opinion that "The question becomes one of law where the facts are not in dispute and admit of but a single conclusion." Even if the facts are not in dispute, they seldom admit of but one conclusion. In this case, one jury found for plaintiff and the second jury disagreed. Does this not prove that these facts admit of more than one conclusion? I think it does. It is also said here that whether damages are impracticable, or extremely difficult, to fix is "except on admitted facts . . . generally a question to be resolved by the trier of fact. . . ." In *Rice* v. *Schmid*, 18 Cal.2d 382 [115 P.2d 498, 138 A.L.R. 589] (the latest pronouncement of this court on this subject), it was held that in "each instance" it was a question of fact. Further, even on admitted facts, more than one inference can be, and is often, drawn. (See *Black* v. *Black*, 91 Cal.App.2d 328 [204 P.2d 950] [stipulated facts; different inferences possible]; *Crisman* v. *Lanterman*, 149 Cal. 647 [87 P. 89, 117 Am.St.Rep. 167] [agreed statement of facts; different inferences possible]; *Anderson* v. *Thacher*, 76 Cal.App.2d 50 [172 P.2d 533] [evidence not conflicting; conflicting inferences therefrom possible]; *Rench* v. *McMullen*, 82 Cal.App.2d 872 [187 P.2d 111] [only documentary evidence offered was subject to conflicting inferences].) Again, this court goes to great lengths to uphold the validity of a provision such as this. Note the "possibilities" which it considers might have happened from a failure of the burglar detection system. It is said that "Entrances to the building after working hours might be made by persons having authority as well as by burglars or by persons bent on mischief. They might or might not cause

damage. There might be the theft of a ham, or of a truckload of goods, or the contents of a safe. There might be a breaking in for the purpose of theft and no theft. If money was taken it might be a few dollars or many thousands. Books might be tampered with, or papers abstracted. Damage might be caused in many ways that were not foreseeable.'' If persons having authority to enter did so, plaintiff would, in all probability, not have sued the defendant, or, if it had done so, that would have been a matter of defense at the trial. If a ham had been stolen, the provision for $50 in all probability, would have been held a penalty as disproportionate to the loss involved. These same arguments apply to the balance of the ''reasoning'' of the majority.

It is also necessary that the amount agreed upon by the parties ''represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained. (*Dyer Bros. Golden West Iron Works* v. *Central Iron Works, supra,* 182 Cal. 588; *Rice* v. *Schmid, supra,* 18 Cal.2d 382, 386; Restatement, Contracts, § 339, p. 554.)'' In other words, the amount agreed upon must bear some reasonable relation to the losses which might occur as a result of a breach. In my opinion, the $50 provision bears no reasonable relation to any amount which might have been lost by a failure of the system to operate.

The characteristic feature of a penalty is that it bears no relation to the actual damage which may be caused by a breach, but is arbitrarily fixed without any attempt to estimate the amount of injury. (8 Cal.Jur. 847.) The majority admits that the validity of a liquidation clause in a contract must be determined in accordance with the facts and circumstances of each particular case, but distinguishes the following cases: *Pacific Factor Co.* v. *Adler,* 90 Cal. 110 [27 P. 36, 25 Am.St.Rep. 102], *Stark* v. *Shemada,* 187 Cal. 785 [204 P. 214], *Rice* v. *Schmid,* 18 Cal.2d 382 [115 P.2d 498, 138 A.L.R. 589], *Robert Marsh & Co., Inc.* v. *Tremper,* 210 Cal. 572 [292 P. 950], *Eva* v. *McMahon,* 77 Cal. 467 [19 P. 872], *Sherman* v. *Gray,* 11 Cal.App. 348 [104 P. 1004], on the ground that ''in each there were factors which would permit the parties to fairly estimate actual damages in the event of a breach—as a predetermined amount for every item of merchandise an obligor failed to deliver,'' and that ''The function of the agreed sum in each of those cases was to insure performance by the obligor and was properly held to be a

penalty.'' I find no distinguishing features. It appears to me that the $50 provision here might just as well be held to be a penalty in the event of nonperformance by the defendant, and that it certainly bears no reasonable relation to the losses which the parties had in contemplation.

I would reverse the judgment with directions to the trial court to retry the case and submit the issue of damages to the jury.