**Trexler Orchards, Inc. v. Altronics, Inc.**

*Edward N. Cahn,* for plaintiff.

*Edward H. McGee,* for defendant.

SCHEIRER, J., December 15, 1970.—In this assumpsit action, the pleadings consist of a complaint, an answer and a motion for summary judgment filed by defendant.

Plaintiff is the owner and operator of a retail store known as "The Apple Tree." On or about March 18, 1968, plaintiff entered into a written contract with defendant to install an automatic burglar alarm system at The Apple Tree.

The contract included an express warranty on the part of defendant that the burglar alarm system would be installed in a workmanlike manner. The sales manager of defendant expressly warranted that agents of defendant would instruct plaintiff's employes in regard to testing the alarm system and that in the event of an unauthorized entry into the premises at a time when the burglar system was switched on, alarms would ring and the applicable police department would be notified.

It is claimed that defendant's warranties were broken because the alarm system was improperly installed, because defendant failed to instruct plain-

tiff's employes in the correct manner of making tests of the system and because defendant failed to properly maintain the system during the first year of operation.

It is averred by plaintiff that as a result of defendant's breach of its warranties, "the plaintiff suffered a loss from burglary on November 2, 1968, in the amount of $2,931.89, which loss would have been prevented if the automatic burglar alarm system was operating as warranted at the time of the burglary."

Defendant averred proper instruction as to testing and denied improper installation and maintenance and answered plaintiff's paragraph no. 7, in part, as follows:

"It is denied that the automatic burglar alarm system, had it been operating, would have prevented the loss alleged. Proof of this allegation is demanded at trial. In further answer thereto, it is averred that the automatic burglar alarm system is not designed to prevent burglary, but to give notice of the commission of a burglary."

A motion for summary judgment should be rendered if the pleadings in this case show that there is no genuine issue as to any material fact and that defendant is entitled to a judgment as a matter of law: Pa. R.C.P. 1035(b).

Our attention is called to the landmark case of Nirdlinger v. American District Telegraph Co., 245 Pa. 453 (1914). In this case, defendant contracted with plaintiff to install and maintain, in his dwelling house, an electric burglar alarm system, so constructed that it would automatically transmit to defendant's office a notice, by signal, of any invasion or disturbance of any door or window in the house, and agreed, upon receipt of such signal, that it would at once dispatch an agent to the invaded premises.

On the day prior to the burglary, the agent of defendant accompanied plaintiff to the house, opened it, and then withdrew, requesting plaintiff to close the door after he had obtained what he wanted from the house, and the agent of defendant promised to shortly return and reset the alarm. Plaintiff left the house and secured the door. Defendant's agent either did not come back into the house or did come back but did not reset the alarm. It might also have been the case that the alarm was reset but that defendant, when receiving the alarm, did not send a representative to interrupt the burglary. The evidence by plaintiff was deemed sufficient to warrant an inference of negligence on the part of defendant.

The case was given to the jury and there was a verdict for plaintiff. The charge of the court on proximate cause was approved but the appellate court observed that there was no conflict of testimony on this point and accordingly was within the province of the court to decide. We shall quote at length from the opinion because of its application to the case at bar, page 459:

"Briefly stated the question is: Was the plaintiff's loss or damage the natural or probable result of defendant's negligence? That is to say, was it a consequence which followed directly from such negligence, and which might or ought to have been foreseen by the defendant as likely to result from a failure on its part to reset the alarm apparatus. Of course, the defendant was not an insurer against loss; nevertheless, if defendant's loss is traceable to its negligent breach of a duty that it owed to the plaintiff, it is liable. The question is, can it be so traced to the negligence established in the case, as the primary, efficient and therefore proximate cause, or was the negligence but a

remote, as distinguished from the proximate cause? Where the original cause, that is, the negligence, is by continuous operation so linked to each succeeding fact, as that all may be said to be one continuous operating succession of events, in which the first becomes naturally linked to the last, and to be its cause, and thus within the probable foresight of him whose negligence is charged, then the proximate cause is established. Where, however, the chain is so broken that the events and facts become independent of each other, then the result cannot be said to be the natural and probable consequence of the primary cause. Penna. R.R. v. Hope, 80 Pa. 373. Let us apply this test to the facts of the present case. The fact next preceding, the fact of plaintiff's loss, and the one fact to which the loss must be referred as its nearest antecedent is the felonious entry of plaintiff's house. How was the defendant's negligence linked, as an operating cause, to this fact or event? Certain it is that it did not produce it. The law regards those consequences as remote, and therefore not actionable which are produced by the intervention of human agency, or the voluntary act of a person over whom the defendant has no control, and his act no influence. Sedgwick on Damages, section 126. We find then a proximate cause of the loss here in the felonious entry of the dwelling, but back of that nothing, at least nothing that involves this defendant. It is argued, however, that defendant's negligence was the proximate cause of the loss because, except for it, the alarm signal would have announced to the defendant the fact of the invasion, and the company thereupon would have dispatched a representative to the invaded premises, and thus prevented the loss. But this is pure speculation. Whether that would have been the result had the

apparatus been in working order can never be known. It would depend upon contingencies without number, any one of which would have been sufficient to disappoint it. Certainly there is nothing in the case from which a legal inference could be derived that the loss would have been averted had the electrical alarm been in order."

After citing a Tennessee case, the court commented:

"So here, the failure of the electric apparatus to give the appropriate signal may have enabled the invader of the house to consummate his design, but it did not cause the burglary."

In 165 A.L.R. 1254, under a heading "Liability of person furnishing, installing, or maintaining burglar alarm for loss from burglary," the following editorial comment is found:

"In the comparatively few cases dealing with the question indicated by the title to the present annotation, it has been held without exception that a person furnishing, installing, or maintaining an automatic burglar alarm or watchman supervisory system is not liable for a burglary loss sustained by one to whom such service is furnished, even though there was negligence in the installation or maintenance of the service, or there was a breach of contract with respect to the service to be furnished, upon the theory that such negligence or breach is not the proximate cause of the loss."

Then follows a review of Connecticut, Illinois and New York cases, as well as the Nirdlinger case.

Several courts have approved stipulations limiting liability for damages caused by failure of a burglary alarm to a stated amount: Schepps v. American District Telegraph Co. of Texas, 286 S.W. 2d 684; Better Food Markets v. American Dist. Co., 40 Cal. 2d 179, 253 P.2d 10.

Plaintiff infers that the Nirdlinger case decided in 1914 is passé and its holding replaced by sections 448 and 449 of the Restatement of Torts, 2d. They are:

"§448. Intentionally Tortious or Criminal Acts Done Under Opportunity Afforded by Actor's Negligence

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."

"§449. Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

A comparison of these sections with the opinion in Nirdlinger shows that the court was well aware of the legal principles involved as to foreseeability and causation. On the facts of Nirdlinger, like our own, an intervening agency was apparent. As noted earlier, the court said: ". . . the failure of the electric apparatus to give the appropriate signal may have enabled the invader of the house to consummate his design, but it did not cause the burglary."

Plaintiff suggests that the question of proximate cause is for a jury's consideration. This is true if there is a conflict on the question of proximate cause. Plain-

tiff avers that its loss would have been prevented if the alarm system had operated as warranted. Defendant in its answer, its motion and its brief, does not deny the burglary but terms it an intervening cause. For the purpose of the motion, defendant admits negligence in the following statement in counsel's brief:

"The defendant, as the agency furnishing, installing and maintaining an automatic burglar alarm, is not liable for burglary loss even if there was negligence in the installation or maintenance of the service, or even if there was a breach of contract with respect to the service to be furnished because such negligence or breach is not the proximate cause of the loss."

Since there is no genuine issue as to the material fact of causation as determined by the holding of Nirdlinger, which remains the law of this Commonwealth and by the holdings in other jurisdictions, defendant is entitled to judgment as prayed for. Plaintiff acknowledges that the concept of proximate cause applies to damages in both tort and contract cases.

Plaintiff may find solace in the critical comment of the Nirdlinger result found in 52 Am. Jur. §102, at page 131, as follows:

"The correctness of this decision, however, seems open to question, since hardly any other motive actuates a person in paying for installation of a burglar-alarm system than the desire to minimize risk of loss from burglary."

## ORDER

Now, December 15, 1970, summary judgment is entered in favor of defendant, Altronics, Inc., and against plaintiff, Trexler Orchards, Inc.